*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARIO PICCIONE, as next friend of GAVINO R. PICCIONE, a minor,

      Plaintiff-Appellant,

v

LYLE A. GILLETTE and PLUMBER'S PORTABLE TOILET SERVICE,

      Defendants-Appellees.

FOR PUBLICATION
January 17, 2019
9:05 a.m.

No. 342826
Kent Circuit Court
LC No. 17-002385-NI

Before: MARKEY, P.J., and M. J. KELLY and SWARTZLE, JJ.

M. J. KELLY, J.

In this third-party automobile negligence claim, Gavino Piccione, by and through his next friend, plaintiff, Mario Piccione, appeals as of right the trial court order granting summary disposition in favor of defendants Lyle A. Gillette and Plumber's Portable Toilet Service. For the reasons set forth in this opinion, we reverse the court's order and remand for further proceedings.

## I. BASIC FACTS

This case arises out of a motor vehicle accident that occurred on December 5, 2016. It is undisputed that Gavino, who was three years old at the time, sustained injuries in the accident and was transported by ambulance to the hospital. Two days later he returned because of pain in his left shoulder when he tried to lift his arm over his head. A CT scan showed that Gavino had an "[o]blique fracture of the mid diaphysis of the left clavicle." He was prescribed a sling, use of ibuprofen and ice as needed for discomfort, and follow up with his primary care physician for a checkup in a week's time. Thereafter, Gavino was also prescribed a clavicle strap. His parents testified to how Gavino's life differed after the injury, but they also testified that after three or four months, he was physically recovered from his injury and was able to resume his normal life.

Defendants moved for summary disposition under MCR 2.116(C)(10), arguing that Gavino's injury did not constitute a serious impairment of a body function because his injury required minimal treatment, it only minimally restricted Gavino's lifestyle for a short period of

time, and he is presently not physically restricted because of his injury. At oral argument, defendants clarified that they were specifically arguing that plaintiff could not demonstrate that Gavino's injury affected his general ability to lead his normal life, again because after a three or four month period, he was no longer physically restricted.

The trial court noted that "certainly when Gavino was in the sling he missed, you know, three to four-months of his normal life," and it added that it was "obvious that a sling is going to slow down anyone that wears it for four-months." Yet, the court concluded that because he has now returned to "his probably very happy normal life as a four-year old," his injury did not raise to the level of a serious impairment of a body function. The court concluded that Gavino's normal life was "running around and playing and focusing on his toys and other kids that might be around," and, given that he was able to resume almost entirely his pre-accident normal life, the injury did not constitute a serious impairment of body function. Accordingly, the court granted summary disposition in favor of defendants.

This appeal follows.

## II. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

Plaintiff argues that the trial court erred by granting summary disposition. We review de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). Under MCR 2.116(C)(10), summary disposition is appropriate "if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018) (quotation marks and citation omitted). When considering such a motion, the reviewing court must review the "pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "Courts are liberal in finding a factual dispute sufficient to withstand summary disposition." *Patrick*, 322 Mich App at 605 (quotation marks and citation omitted). A court may not "make findings of fact; *if the evidence before it is conflicting*, summary disposition is improper." *Id*. at 605-606 (quotation marks and citation omitted).

### B. ANALYSIS

Under Michigan's no-fault act, MCL 500.3101 *et seq*., tort liability is limited. *McCormick v Carrier*, 487 Mich 180, 189; 795 NW2d 517 (2010). However, "[a] person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." MCL 500.3135(1). Serious impairment of a body function "means an objectively manifested impairment of an important

-2-

body function that affects the person's general ability to lead his or her normal life." MCL 500.3135(5).

> To prove a serious impairment of a body function, a plaintiff must establish:
>
> (1) an objectively manifested impairment (observable or perceivable from actual symptoms or conditions) (2) of an important body function (a body function of value, significance, or consequence to the injured person) that (3) affects the person's general ability to lead his or her normal life (influences some of the plaintiff's capacity to live in his or her normal manner of living). [*McCormick*, 487 Mich at 215.]

In making that determination, "there is no bright-line rule or checklist to follow[.]" *Chouman v Home Owners Ins Co*, 293 Mich App 434, 441; 810 NW2d 88 (2011). Instead, "[w]hether someone has suffered a serious impairment is 'inherently fact- and circumstance-specific and [the analysis] must be conducted on a case-by-case basis.' " *Id*., quoting *McCormick*, 487 Mich at 215 (brackets in original).

In this case, the only question is whether the fracture to Gavino's clavicle affected his general ability to lead his normal life. In *Patrick*, this Court reiterated that "an impairment to an important body function affects a person's general ability to lead a normal life if it has 'an influence on some of the person's capacity to live in his or her normal manner of living.' " *Patrick*, 322 Mich App at 607, quoting *McCormick*, 487 Mich at 215. Because no two people are alike, "the extent to which a person's general ability to live his or her normal life is affected by an impairment is undoubtedly related to what the person's normal manner of living is . . . ." *McCormick*, 487 Mich at 202-203. In other words, the inquiry is subjective. *Patrick*, 322 Mich App at 607. In order to show that the impaired person's ability to lead his or her normal life has been affected, we compare his or her life before and after the injury. *Nelson v Dubose*, 291 Mich App 496, 499; 806 NW2d 333 (2011). Important to making this comparison is the fact that "the statute merely requires that a person's general ability to lead his or her normal life has been *affected*, not destroyed." *McCormick*, 487 Mich at 202. Therefore, "courts should consider not only whether the impairment has led the person to completely cease a pre-incident activity or life element, but also whether, although a person is able to lead his or her pre-incident normal life, the person's general ability to do so was nonetheless affected." *Id*. Additionally, "the statute only requires that some of the person's *ability* to live in his or her normal manner of living has been affected, not that some of the person's normal manner of living has itself been affected." *Id*. Lastly, as our Supreme Court explained in *McCormick*, "[w]hile the Legislature required that a 'serious disfigurement' be 'permanent,' it did not impose the same restriction on a 'serious impairment of body function.' " *Id*. at 203, quoting MCL 500.3135(1). Thus, there is no "express temporal requirement as to how long an impairment must last in order to have an effect on the person's general ability to live his or her normal life." *Id*. (quotation marks omitted).

In this case, Gavino was a three year old child at the time he suffered the impairment. His parents testified that as a result of the impairment he was unable to go to school for approximately two weeks, and when he did return to school he was unable to use the play equipment. Additionally, they testified that after the accident they had to help him go to the bathroom, including by carrying him to the bathroom. His father testified that before the

accident, Gavino could dress himself, but afterward he could not. There was also testimony that Gavino needed help going up and down stairs because his balance was negatively affected by his impairment. Further, at times, his ability to sleep without pain was also compromised; his father testified that on occasion Gavino would wake up complaining about shoulder pain. Finally, the record also reflects that before the accident Gavino liked to color, but after the accident he did not want to do so. Further, before the accident he rode his bicycle, played soccer, and played with his scooter in the basement, but after he was injured he was unable to do so. His mother testified that, generally, after the accident, Gavino was "cautious" about physical activities. Viewing the above facts in the light most favorable to plaintiff, a jury could conclude that Gavino's general ability to lead his normal life was affected by the impairment.

Still, defendants direct our attention to facts in the record showing that Gavino's impairment did not last the entire three to four month period he was in a sling/clavicle strap, and there is also evidence that Gavino's inability to go to school was only limited for two weeks. Although certainly relevant, that evidence suggests that there is a factual conflict with regard to the nature and extent of his injury. In such cases, summary disposition is not appropriate. See *Nelson*, 291 Mich App at 499 ("The question whether there is a serious impairment of body function is a question of law if there is no factual dispute about the injuries, or if any factual dispute is immaterial to the question.").

Further, on appeal, defendants contend that Gavino's impairment eventually healed and he was able to return, unaffected, to his normal life. The trial court agreed, finding that although there was evidence that Gavino's general ability to lead his normal life was affected by the fracture to his clavicle, he was presently unaffected by the impairment and so he could not satisfy the third prong of the *McCormick* test. Yet, a person's ability to lead his or her general life does not have to be destroyed in order to constitute a threshold injury; it only needs to have been affected, and here the evidence allows for an inference that Gavino's general ability to lead his normal life was affected even though it was not completely destroyed. See *McCormick*, 487 Mich at 202. Moreover, a serious impairment of body function—unlike a permanent serious disfigurement—does not have to be permanent, so the fact that the impairment to Gavino's important body function only lasted three or four months has no bearing on the question at hand. See *id*. Therefore, given that there is a genuine issue of material fact with regard to the third prong of the *McCormick* test, and given that the trial court erred in its application of the statute, summary disposition was not appropriate.

Reversed and remanded for further proceedings. Plaintiff may tax costs as the prevailing party. MCR 7.219(A). We do not retain jurisdiction.

/s/ Michael J. Kelly