*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RICHARD D. HAGERMAN,

      Plaintiff-Appellant,

v

RASHI KAKAR,

      Defendant-Appellee.

UNPUBLISHED
April 23, 2020

No. 346056
Ingham Circuit Court
LC No. 16-000819-NI

Before: BORRELLO, P.J., and O'BRIEN and CAMERON, JJ.

PER CURIAM.

Plaintiff Richard D. Hagerman appeals the trial court's order granting defendant Rashi Kakar's motion for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) on Hagerman's negligence claim. We reverse and remand.

## I. FACTS AND PROCEDURAL HISTORY

This case arises out of a motor vehicle accident that occurred at the intersection of Eaton Rapids Road and Bishop Road in Ingham County, Michigan. On the evening of October 2, 2015, Hagerman's motor vehicle was struck when the vehicle that Kakar was driving entered the intersection while Hagerman had the right of way. Hagerman reported having neck pain at the scene of the accident. He was treated at a hospital and was later diagnosed with a sprained ankle, a cervical strain, straightening of the cervical lordosis, cervicalgia, and a shoulder strain. Hagerman reported that he suffered from migraines after the accident.

Hagerman filed suit against Kakar, alleging that she was negligent in causing the accident. Discovery commenced. On September 27, 2016, Hagerman submitted to an independent medical examination. The physician who conducted the examination concluded that Hagerman's cervical strain was related to the accident. However, the physician believed that Hagerman's prognosis was excellent and noted that cervical strains typically resolve within six months to a year. The physician did not believe that further treatment was necessary or that temporary or permanent restrictions should be placed on Hagerman.

Hagerman testified at a September 28, 2017 deposition that he was still feeling pain in his left shoulder and neck and that he was still experiencing headaches.[1] However, Hagerman admitted that he had suffered from headaches and shoulder pain before the motor vehicle accident occurred. Hagerman testified that, after the accident, he was unable to work for 30 days because of the pain he was experiencing in his neck. As of September 2017, Hagerman did not lift weights with his left arm, play basketball or football, or swim long distances. But Hagerman admitted that he did not go to the gym very often before the motor vehicle accident and that he could still complete abdominal and cardio workouts. Hagerman testified that he could no longer walk his dogs as often as he used to, but he indicated that his dogs' obesity contributed to their inability to walk long distances. Although Hagerman continued to socialize with friends and family, he was not able to enjoy going to movie theaters and could not lie on the left side of his body for longer than 10 minutes because of the discomfort that he suffered. Hagerman testified that he had difficulty driving because his range of motion was restricted due to his neck pain, but he did not testify that he was physically unable to drive. He admitted that he had purchased and had driven a motorcycle after his accident. Hagerman testified that his pain was worse in the mornings when he was getting out of bed and getting dressed. However, he was able to get dressed, groom himself, and complete household chores.

After the close of discovery, both Hagerman and Kakar moved for summary disposition under MCR 2.116(C)(10). The trial court ultimately granted Kakar's motion. The trial court, noting that Hagerman had the right of way, determined that there was no genuine issue of material fact concerning whether Kakar was negligent in causing the accident. The trial court found that, although Hagerman was diagnosed with a sprained ankle, a cervical strain, and a shoulder strain after the accident, there was evidence that Hagerman had headaches before the accident and that he suffered from a left shoulder injury at work. Based on this evidence, the trial court determined that there was a genuine issue of material fact as to whether Hagerman's pain and limitations were caused by the accident. Finally, the trial court determined that there was no genuine issue of material fact regarding whether Hagerman's injuries affected his general ability to lead his normal life. The trial court noted that, after Hagerman returned to work, he continued to work the same number of hours. With respect to Hagerman's life outside of work, the trial court concluded that Hagerman could still lead his normal life even if he suffered from some pain and sometimes did less than he had before the accident. The trial court found that Hagerman's normal life activities mostly remained the same following the accident. The trial court entered summary disposition in favor of Kakar. This appeal followed.

## II. STANDARD OF REVIEW

Motions for summary disposition are reviewed de novo. See *McCormick v Carrier*, 487 Mich 180, 188; 795 NW2d 517 (2010). This Court reviews the entire record to determine whether a party was entitled to summary disposition. *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018). A motion brought under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim and is reviewed "by considering the pleadings, admissions, and other evidence

---

[1] Hagerman testified that he stopped experiencing pain in his ankle a few weeks after the motor vehicle accident occurred.

submitted by the parties in the light most favorable to the nonmoving party. Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 655 NW2d 486 (2008).

### III. ANALYSIS AND APPLICATION

We conclude that summary disposition was inappropriately granted because a genuine issue of material fact exists concerning whether Hagerman's general ability to lead his normal life was affected by the alleged accident-related injuries.[2]

Under MCL 500.3135(1) of the no-fault act, "A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." MCL 500.3135(5) defines a "serious impairment of body function" as follows:

> (5) As used in this section, "serious impairment of body function" means an impairment that satisfies all of the following requirements:
>
> (a) It is objectively manifested, meaning it is observable or perceivable from actual symptoms or conditions by someone other than the injured person.
>
> (b) It is an impairment of an important body function, which is a body function of great value, significance, or consequence to the injured person.
>
> (c) It affects the injured person's general ability to lead his or her normal life, meaning it has had an influence on some of the person's capacity to live in his or her normal manner of living. Although temporal considerations may be relevant, there is no temporal requirement for how long an impairment must last. This examination is inherently fact and circumstance specific to each injured person,

---

[2] As an initial matter, we note that the first two issues raised in Hagerman's appellate brief are not properly before this Court. Hagerman argues as his first issue that the trial court properly determined that there was no genuine issue of material fact concerning Kakar's negligence. Hagerman argues as his second issue that the trial court erred by finding that a genuine issue of material fact existed as to whether Hagerman's current issues were caused by the accident. MCR 7.205(E)(4) limits an appeal to those issues raised in the application and its supporting brief, unless otherwise ordered. In a March 24, 2019 order, this Court explicitly limited the grant of leave to appeal to the issues raised in the application and its supporting brief. *Hagerman v Kakar*, unpublished order of the Court of Appeals, entered March 24, 2019 (Docket No. 346056). Hagerman's application for delayed leave to appeal and Hagerman's brief in support of that application raised a single issue and did not discuss either of the first two issues raised in Hagerman's appellate brief. Therefore, these issues are not properly before us, and we will not consider them.

must be conducted on a case-by-case basis, and requires comparison of the injured person's life before and after the incident.

In *McCormick*, 487 Mich at 215, our Supreme Court stated that the proper interpretation of the clear and unambiguous language in MCL 500.3135 creates the following test:

> To begin with, the court should determine whether there is a factual dispute regarding the nature and the extent of the person's injuries, and, if so, whether the dispute is material to determining whether the serious impairment of body function threshold is met. MCL 500.3135(2)(a)(*i*) and (*ii*). If there is no factual dispute, or no material factual dispute, then whether the threshold is met is a question of law for the court. *Id*.

> If the court may decide the issue as a matter of law, it should next determine whether the serious impairment threshold has been crossed. The unambiguous language of MCL 500.3135([5]) provides three prongs that are necessary to establish a "serious impairment of body function": (1) an objectively manifested impairment (observable or perceivable from actual symptoms or conditions) (2) of an important body function (a body function of value, significance, or consequence to the injured person) that (3) affects the person's general ability to lead his or her normal life (influences some of the plaintiff's capacity to live in his or her normal manner of living).

On appeal, only the third prong of *McCormick* is at issue, i.e., whether the serious impairment affected Hagerman's general ability to lead his normal life. In *McCormick*, 487 Mich at 202, our Supreme Court explained that to "affect the person's ability to lead his or her normal life" means "to have an influence on some of the person's capacity to live in his or her normal manner of living." "By modifying 'normal life' with 'his or her,' the Legislature indicated that this requires a subjective, person- and fact-specific inquiry that must be decided on a case-by-case basis." *Id*. Thus, "[d]etermining the effect or influence that the impairment has had on a plaintiff's ability to lead a normal life necessarily requires a comparison of the plaintiff's life before and after the incident." *Id*.

Viewing the evidence in the light most favorable to Hagerman, we conclude that the trial court erred in concluding that Hagerman's injuries did not affect his general ability to lead his normal life. Hagerman testified that he did not work for 30 days as a result of his accident-related injuries. Although Kakar accurately notes that Hagerman was not told by a doctor that he could not work for 30 days, we conclude that this is not dispositive. Hagerman testified that his doctor instructed him to take a week or two off of work. When Hagerman attempted to return to work, he was sent home due to the fact that he was limping and experiencing pain. The following day, Hagerman expressed that he did not believe that he would be able to work because of the pain he was experiencing. As a result, Hagerman was given a temporary leave of absence without pay. Hagerman testified that, when he returned to work, he was permitted to "skip" a certain job because it caused pain to his shoulder.

Although Hagerman only missed 30 days of work, in *McCormick*, our Supreme Court explicitly stated that "the statute does not create an express temporal requirement as to how long an impairment must last in order to have an effect on 'the person's general ability to live his or her normal life.'" *McCormick*, 487 Mich at 203. Furthermore, Hagerman did not need to show that his general ability to lead his normal life had been "destroyed," and there "is no quantitive minimum as to the percentage of a person's normal manner of living that must be affected." *Id*. at 202-203. Indeed, a plaintiff can meet the third prong by showing impairment for a relatively short period of time. See e.g., *Piccione v Gillette*, 327 Mich App 16, 21-22; 932 NW2d 197 (2019) (opinion by M. J. Kelly, J.)[3] (holding that there was a genuine issue of material fact precluding summary disposition regarding whether the injured plaintiff's general ability to lead his normal life was impaired by his clavicle fracture where, in addition to evidence that the plaintiff could not go to school for two weeks and that his ability to complete various other activities was compromised after the accident for a period of time, there was also evidence that the plaintiff had physically recovered from his injury and resumed his normal life within three or four months). Therefore, the trial court erred by concluding that the undisputed evidence established that Hagerman's ability to work was not affected by the alleged accident-related injuries.

The evidence also supports that Hagerman's personal life was affected. Hagerman testified that, after the accident, he suffered pain in the morning while he was getting out of bed and getting dressed. Hagerman testified that he no longer played basketball or football or swam long distances. He was also unable to lie on his left side or watch movies in a movie theatre because of the pain and discomfort that he experienced. Hagerman testified that he could not walk his dogs as often or as far and that he struggled with performing certain chores. Although Kakar argues that a doctor did not restrict Hagerman from performing certain tasks, the fact that an injured person is cautious about participating in an activity after an accident may demonstrate that an injury has had an effect on the person's ability to live his normal life. See *Piccione*, 327 Mich App at 22.[4] In this case, Hagerman's decision not to swim or play sports due to his fear of further injury, his decision to walk his dogs less often than he did before the accident, and his pain and discomfort preventing him from going to the movies or doing other things that strained his left shoulder and left side of his body could demonstrate that his ability to lead his normal life was affected by his alleged injuries. Therefore, when viewing the evidence in a light most favorable to Hagerman, we conclude that the trial court erred by granting summary disposition in favor of Kakar.

---

[3] In *Piccione*, Judge Markey and Judge Swartzle concurred with the lead opinion because binding precedent compelled reversal. *Piccione*, 327 Mich App at 23 (Markey, J., and Swartzle, J., concurring).

[4] Kakar cites various unpublished opinions of this Court in support of the propositions that "self-imposed" limitations do not count as an impairment on the ability to lead a normal life, and that serious impairment may not be predicated on the inability to do activities that have not been attempted since the injury. However, to the extent that there is a conflict between *Piccione* and the unpublished opinions cited by Kakar, *Piccione* controls. See MCR 7.215(C)(2).

Reversed and remanded for proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Colleen A. O'Brien
/s/ Thomas C. Cameron