*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BLISS CURETON,

Plaintiff-Appellant,

v

RAHAF HALIMEH-SUEDE,

Defendant-Appellee.

UNPUBLISHED
June 18, 2020

No. 347668
Oakland Circuit Court
LC No. 2018-163303-NI

Before: GADOLA, P.J., and CAVANAGH and M. J. KELLY, JJ.

PER CURIAM.

In this third-party automobile negligence claim, plaintiff, Bliss Cureton, appeals as of right the trial court order granting defendant, Rahaf Halimeh-Suede, summary disposition under MCR 2.116(C)(10). For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

This case arises from a motor-vehicle crash on July 4, 2017. The facts of the accident are not disputed. Cureton was a passenger in a vehicle driven by her boyfriend, Kevin Dysard. While Dysard was stopped at a red light, Halimeh-Suede rear-ended his vehicle.

Initially, Cureton had no complaints of pain or injury as a result of the collision, and she continued with Dysard to their destination. The next day, however, she went to the emergency room with complaints of back pain, severe abdominal pain, and numb legs. At the hospital, Cureton had imaging scans done of her chest, abdomen, pelvis, and the thoracic and lumbar region of her spine. The scans revealed "[n]o appreciable acute posttraumatic sequela chest, abdomen, or pelvis" and "[n]o acute osseous injury of the thoracic or lumbar spine." The scans also showed that multiple subcentimeter cystic lesions within Cureton's pancreatic head, and it was recommended that Cureton have a follow-up scan of the pancreas in 12 months.

Approximately one week after the crash, Cureton followed up with her primary care physician. She indicated that, sometime before the car crash, she was prescribed pain medication and was placed on a high-blood pressure medicine. Cureton attributed her high-blood pressure to the motor-vehicle crash, stating that the pain caused by the accident raised her blood pressure. In

addition, from August 2017 until November 2017, Cureton treated with a chiropractor, who Cureton said told her that her back was dislocated and her pelvic bone was titled because of the July 2017 crash.

On January 1, 2018, Cureton slipped and fell on ice and snow that had accumulated outside of her house. Cureton attributed her fall to a back spasm, and she explained that because of the July 2017 motor-vehicle crash she had developed back spasms starting in the later part of 2017. Cureton's left ankle was injured in the fall. At first, believing it was only sprained, she did not seek medical treatment. However, she later learned that she had "broke" her ankle and had surgery in February 2018.

In September 2018, Cureton's no-fault insurer required her to participate in a so-called independent medical examination. The evaluator, Dr. Joseph Salama, concluded that the injury to Cureton's left foot/ankle was a result of the January 2018 fall and was not because of the July 2017 motor-vehicle crash. Also, in September 2018, Dr. Harvey Ager, a board-certified psychologist, conducted a second independent medical examination at the behest of her no-fault insurer. He diagnosed her with mild-persistent depression, but determined that the diagnosis was unrelated to the July 2017 motor-vehicle crash.

In January 2018, Cureton filed a third-party negligence claim against Halimeh-Suede, asserting that as a result of the motor-vehicle collision she sustained a serious impairment of a body function. Following discovery, Halimeh-Suede moved for summary disposition, contending that Cureton could not establish that the accident caused an objectively manifested impairment affecting Cureton's general ability to lead her normal life. The trial court, in a written opinion, determined that summary disposition was warranted under MCR 2.116(C)(10) because Cureton failed to demonstrate that she sustained an objectively manifested impairment of a body function related to the accident. The court noted that, although the ankle injury constituted an objectively manifested impairment, Cureton failed to establish that the January 2018 fall was caused by injuries sustained in the motor-vehicle crash.

This appeal follows.

## II. SUMMARY DISPOSITION

## A. STANDARD OF REVIEW

Cureton argues that the trial court erred by granting summary disposition under MCR 2.116(C)(10). Challenges to a court's decision to grant or deny summary disposition are reviewed de novo. *Sullivan v Michigan*, 328 Mich App 74, 80; 935 NW2d 413 (2019). "De novo review means we review this issue independently, without any required deference to the courts below." *People v Bruner*, 501 Mich 220, 226; 912 NW2d 514 (2019). "Under MCR 2.116(C)(10), summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Piccione v Gillette*, 327 Mich App 16, 19; 932 NW2d 197 (2019) (quotation marks and citation omitted). The pleadings, admissions, and other evidence submitted by the parties must be viewed in the light most favorable to the nonmoving party. *Id*. "A genuine issue of material fact exists when the record, giving the benefit

of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted).

## B. ANALYSIS

Tort liability in Michigan is limited by the no-fault act, MCL 500.3101 *et seq*. *McCormick v Carrier*, 487 Mich. 180, 189; 795 N.W.2d 517 (2010). Nevertheless, "[a] person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." MCL 500.3135(1). A serious impairment of a body function means an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life. MCL 500.3135(5). In *McCormick*, our Supreme Court explained that to prove a serious impairment of a body function, the plaintiff must establish:

> (1) an objectively manifested impairment (observable or perceivable from actual symptoms or conditions) (2) of an important body function (a body function of value, significance, or consequence to the injured person) that (3) affects the person's general ability to lead his or her normal life (influences some of the plaintiff's capacity to live in his or her normal manner of living). [*McCormick*, 487 Mich at 215.]

When evaluating whether the threshold is satisfied, "there is no bright-line rule or checklist to follow in making that evaluation." *Chouman v Home Owners Ins Co*, 293 Mich App 434, 441; 810 NW2d 88 (2011). Instead "[w]hether someone has suffered a serious impairment is 'inherently fact-and circumstance-specific and [the analysis] must be conducted on a case-by-case basis.' " *Id*., quoting *McCormick*, 487 Mich at 215 (brackets in original). "[T]he objectively manifested requirement signifies that plaintiffs must introduce evidence establishing that there is a physical basis for their subjective complaints of pain and suffering and that showing an impairment generally requires medical testimony." *McCormick*, 487 Mich at 198 (quotation marks omitted).

At her deposition, Cureton testified that because of the crash her back was damaged. She asserted that the specifics of her back injury were related to her by her chiropractor, who told her that her back was dislocated and her left pelvic bone was titled. She also articulated, multiple times, that she had extreme pain in her back as a result of the accident. However, the CT scans performed the day after the accident reveal no acute trauma to Cureton's spine. Rather, the imaging results specifically stated:

> Thoracic spin: Normal vertebral body height and alignment. Disc spaces are maintained. Facet joints articulate anatomically. No appreciate acute fracture. No significant degenerative changes. Perivertebral soft tissues are within normal limits.

> Lumbar spine: Normal vertebral body height and alignment. Disc spaces are maintained. Facet joints articulate anatomically. No appreciable acute fracture.

No significant degenerative changes. Perivertebral soft tissues are within normal limits.

Furthermore, although the chiropractic records submitted by Cureton indicate that she had a subluxated vertebrae, the records do not attribute her injuries to the July 2017 motor-vehicle crash, nor do they include any objective imagining scans. Likewise, although Cureton testified that in the later part of 2017, she started developing back spasms, there is no evidence linking her self-reported back spasms to an objectively manifested impairment of her back. Consequently, although Cureton complains of subjective back pain as a result of the accident, she has failed to direct this Court to any evidence of an objectively manifested impairment of her back. The trial court, therefore, did not err by granting summary disposition as it relates to her claim of a back impairment.

Next, although there is evidence that the injury to her left ankle was objectively manifested, Cureton has not established that her ankle injury was caused as a result of the July 2017 motor-vehicle collision. "In a negligence action, a plaintiff must establish both factual causation, i.e., 'the defendant's conduct in fact caused harm to the plaintiff,' and legal causation, i.e., the harm caused to the plaintiff 'was the general kind of harm the defendant negligently risked.' " *Ray v Swager*, 501 Mich 52, 64; 903 NW2d 366 (2017). A causation theory based on only slight evidence is inadequate. *Skinner v Square D Co*, 445 Mich 153, 164; 516 NW2d 475 (1994). "Nor is it sufficient to submit a causation theory that, while factually supported, is, at best, just as possible as another theory." *Id*. "Rather, [there] must [be] substantial evidence from which a jury may conclude that more likely than not, but for [the challenged] conduct, [the claimed] injuries would not have occurred." *Id*. at 164-165. Here, the only evidence linking the ankle injury to the July 2017 car crash is Cureton's belief that (1) the motor-vehicle crash damaged her back, (2) the damage to her back manifested in back spasms, and (3) the back spasms caused her to slip and fall while she was walking on snow-covered ice. Despite testifying that she developed back spasms because of the motor-vehicle crash, there is no evidence—other than Cureton's subjective contentions—supporting that her back spasms were, in fact, caused by the motor-vehicle accident. Furthermore, during a medical evaluation required by her no-fault insurer, Cureton did not mention a back spasm as a cause of her January 2018 fall. The examiner determined that there was no causal link between the motor-vehicle crash and the January 2018 slip and fall. Thus, even viewing the evidence in the light most favorable to Cureton, there is only slight evidence to support that her ankle injury was related—in any way—to the 2017 motor-vehicle collision. Therefore, the trial court did not err by granting summary disposition as it relates to her claim of an ankle impairment.

Finally, although Cureton also asserts that the 2017 crash aggravated a preexisting cyst, the CT scans merely indicate the existence of a cyst, and Cureton's testimony supports that she was, subjectively, in pain. Because an objective manifestation of the impairment is required, this

is insufficient to overcome the threshold set forth in *McCormick*. Cureton's claim, therefore, cannot survive summary disposition.[1]

Affirmed. Halimeh-Suede, as the prevailing party, may tax costs. MCR 7.219(A).

/s/ Michael F. Gadola
/s/ Mark J. Cavanagh
/s/ Michael J. Kelly

---

[1] Halimeh-Suede also contends that summary disposition was warranted because Cureton's general ability to lead her normal life is not affected by any impairment. However, the trial court did not address this contention, and we decline to do so for the first time on appeal.