*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KENYA MOORE,

        Plaintiff-Appellant,

and

SCAN CLEAR, LLC, and PRISM LAB, LLC,

        Intervening Plaintiffs,

v

LYVONDA HOPKINS,

        Defendant-Appellee,

and

FARMERS INSURANCE EXCHANGE,

        Defendant.

UNPUBLISHED
February 14, 2025
2:26 PM

No. 365854
Wayne Circuit Court
LC No. 21-002739-NI

Before: YOUNG, P.J., and GARRETT and WALLACE, JJ.

PER CURIAM.

Defendant Lyvonda Hopkins's vehicle struck plaintiff Kenya Moore as Moore was walking in a parking lot. Moore filed this action, alleging that she suffered a serious impairment of body function under MCL 500.3135. She appeals as of right the trial court's order granting Hopkins's motion for summary disposition under MCR 2.116(C)(10). Because the trial court erred by determining that Moore failed to establish a genuine issue of material fact regarding whether she suffered an objectively-manifested impairment as a result of the accident, we reverse and remand for further proceedings.

## I. FACTUAL BACKGROUND

This no-fault action arises from a March 3, 2020 vehicle–pedestrian collision that occurred as Moore was walking through a parking lot. While driving less than 10 miles per hour, Hopkins's vehicle struck the right side of Moore's body, causing Moore to fall to the ground. An ambulance transported Moore to the hospital, where she reported pain in her legs, right knee, back, neck, shoulders, and head. Hospital staff conducted medical tests, but Moore left before the hospital discharged her. The following day, Moore went to a different hospital, where she underwent additional testing.

Approximately two weeks later, on March 19, 2020, Moore underwent magnetic resonance imaging (MRI) tests of her cervical, lumbar, and thoracic spine at Northland Radiology Diagnostic Imaging Center (Northland). On May 9, 2020, she underwent MRI tests of her cervical and lumbar spine, right shoulder, and both knees at Scan Clear, LLC (Scan Clear). Between June and September 2020, Drs. Marc Meissner, M.D., and Theresa Oney, M.D., conducted insurance medical examinations (IMEs)[1] of Moore. In January 2022, Dr. Adeel Khalid, M.D., reviewed and offered his analysis of the Scan Clear MRI scans. Finally, in April 2022, Dr. Gino Sessa, M.D., conducted an IME of Moore.

Moore filed this action, alleging, in relevant part, that she sustained a serious impairment of body function as a result of the accident.[2] Hopkins moved for summary disposition under MCR 2.116(C)(10), arguing that Moore failed to demonstrate that she sustained a threshold injury to establish a serious impairment of body function under MCL 500.3135. Moore's deposition testimony and medical records indicated that she had multiple preexisting, degenerative conditions that predated the accident. Hopkins argued that Moore's injuries were the result of her preexisting conditions rather than the accident. Following a hearing, the trial court granted Hopkins's motion on the basis that Moore had failed to demonstrate that she suffered her injuries as a result of the accident.

## II. STANDARD OF REVIEW

"We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Wilmore-Moody v Zakir*, 511 Mich 76, 82; 999 NW2d 1 (2023). The trial court must consider all of the evidence that the parties submit in the light most favorable to the nonmoving party. *El-Khalil*, 504

---

[1] Although Hopkins refers to these examinations as "independent medical examinations," we refer to them as insurance medical examinations. As this Court observed in *Micheli v Mich Auto Ins Placement Facility*, 340 Mich App 360, 364 n 3; 986 NW2d 451 (2022), the phrase "independent medical examination" is a "euphemistic term of art." In the insurance context, "an IME involves obtaining a second opinion from a doctor who is entirely selected and paid for by an insurance company, rendering the 'independence' of the examination somewhat questionable." *Id*.

[2] Only Moore's negligence claim against Hopkins is at issue in this appeal.

Mich at 160. A motion under MCR 2.116(C)(10) is properly granted only when there exists no genuine issue of material fact. *Id*.

## III. DISCUSSION

"Under Michigan's no-fault act, MCL 500.3101 *et seq*., tort liability is limited." *Piccione v Gillette*, 327 Mich App 16, 19; 932 NW2d 197 (2019). A person is "subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." MCL 500.3135(1). The term "serious impairment of body function" is an impairment that meets the following criteria:

> (a) It is objectively manifested, meaning it is observable or perceivable from actual symptoms or conditions by someone other than the injured person.

> (b) It is an impairment of an important body function, which is a body function of great value, significance, or consequence to the injured person.

> (c) It affects the injured person's general ability to lead his or her normal life, meaning it has had an influence on some of the person's capacity to live in his or her normal manner of living. [MCL 500.3135(5).][3]

Whether an injured person suffered a serious impairment of a body function is a question of law for the court to determine if the court finds either of the following:

> (*i*) There is no factual dispute concerning the nature and extent of the person's injuries.

> (*ii*) There is a factual dispute concerning the nature and extent of the person's injuries, but the dispute is not material to the determination whether the person has suffered a serious impairment of body function or permanent serious disfigurement. [MCL 500.3135(2)(a)(*i*) and (*ii*).]

Hopkins argues that Moore cannot establish that she suffered an objectively-manifested impairment as a result of the accident. As stated in MCL 500.3135(5)(a), an objectively-manifested impairment "is an impairment that is evidenced by actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function." *McCormick v Carrier*, 487 Mich 180, 196; 795 NW2d 517 (2010). Therefore, an injured person's pain and suffering alone is insufficient to meet the serious-impairment threshold. *Id*. at 197.

---

[3] Although the parties rely on previous versions of MCL 500.3135 in their briefs, we rely on the current version of the statute, which was the version in effect on the date of the accident. The Legislature amended MCL 500.3135(5), effective June 11, 2019, to incorporate the three-prong serious-impairment-of-body-function test that our Supreme Court set forth in *McCormick v Carrier*, 487 Mich 180; 795 NW2d 517 (2010). See 2019 PA 21 and 2019 PA 22.

Rather, a plaintiff must introduce evidence establishing a physical basis for the pain and suffering. *Id*. at 198.

In this case, Moore demonstrated an objective basis for her impairments. A lumbar MRI taken at Northland a few weeks after the accident showed a "[d]isc protrusion with annular tear at L4-L5 causing neuroforaminal encroachment" and "[m]ild straightening of the lumbar lordosis, which could be secondary to muscular strain." A cervical MRI taken the same day showed "[s]traightening of the cervical lordosis, which could be secondary to muscular strain." Similarly, MRIs taken at Scan Clear a few months after the accident showed: (1) as to Moore's cervical spine, "[m]ild disc bulging [at] C3-C4," (2) as to her lumbar spine, "[c]entral disc protrusion with disc bulging at L5-S1," (3) as to her right shoulder, "[d]iffuse heterogeneous of bone marrow edema," a "[s]upraspinatus tendon tear without retraction," a "[g]lenoid labrum tear," and "[f]luid subacromial/subdeltoid suspect for bursitis," (4) as to her right knee, degenerative changes "with an element of patellar chondromalacia," and (5) as to her left knee,[4] "bone marrow edema/bone bruising/subcortical cystic change posterior patella and distal femur anterior lateral."

After reviewing Moore's MRI scans and other medical records, Dr. Oney opined that Moore sustained soft-tissue injuries "consisting of a cervical strain injury and temporary aggravation of chronic low back pain." Dr. Sessa similarly concluded that Moore likely sustained a "soft-tissue strain injury." Further, Dr. Meissner determined that objective findings supported Moore's subjective complaints "in areas where she exhibited tenderness." Viewing the evidence in the light most favorable to Moore, the MRIs and IME reports of Drs. Oney, Sessa, and Meissner established an objective basis for Moore's subjective complaints.

Hopkins contends that Moore cannot demonstrate that the accident, rather than her preexisting, degenerative conditions, caused her impairments. Similarly, the trial court determined that Moore failed to show that the MRI findings were related to the accident. "Causation is an issue that is typically reserved for the trier of fact unless there is no dispute of material fact." *Patrick v Turkelson*, 322 Mich App 595, 616; 913 NW2d 369 (2018).

In this case, a dispute of material fact exists. Dr. Oney opined that Moore sustained soft-tissue injuries "resulting from" the accident, although Dr. Oney did not believe that all of Moore's complaints were attributable to the accident. Dr. Sessa also opined that Moore sustained soft-tissue injuries as a result of the accident. Further, Dr. Meissner stated that it was "likely" that the pain that Moore experienced immediately after the accident "was in fact due to the accident and may well have aggravated symptoms that existed prior to the accident."

We also note that the results of the objective MRI tests were consistent with Moore's subjective complaints as well as the physical examinations that physicians conducted in the days following the accident. The lumbar MRI results (e.g., a disc protrusion with annular tear at L4-L5 causing neuroforaminal encroachment and a bulging disc at L5-S1) were consistent with Moore's complaints of low-back pain in the emergency room following the accident and with the

---

[4] Because the other Scan Clear MRI report refers specially to Moore's right knee, it appears that the report at issue refers to Moore's left knee.

emergency-room physician's report, which indicated tenderness upon examination. Likewise, the cervical MRI results (e.g., bulging disc at C3-C4) were consistent with Moore's complaints of neck pain in the emergency room and with the emergency-room physician's report, which indicated reproducible cervical neck tenderness upon examination.

Further, the MRI results of Moore's right shoulder (e.g., supraspinatus tear and labral tear) were consistent with Moore's complaints of shoulder pain at the hospital the day after the accident. Finally, the MRI results of Moore's right knee (e.g., chondromalacia) were consistent with her complaints of right-knee pain in the emergency room and the abrasions over her right knee, which the emergency-room physician recorded and which constituted objective evidence of trauma to Moore's right knee. Accordingly, because there exists a genuine issue of material fact regarding causation, that issue is for the jury to determine.

## IV. CONCLUSION

Viewing the evidence in the light most favorable to Moore, the trial court erred by determining that no genuine issue of material fact exists regarding whether Moore established an objectively-manifested impairment as a result of the accident. We therefore reverse the trial court's order granting Hopkins's motion for summary disposition.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Adrienne N. Young
/s/ Kristina Robinson Garrett
/s/ Randy J. Wallace

-5-