*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

YVETTA TURNER,

Plaintiff-Appellant,

v

BRITAIN E. WARD and YELLOW ROSE
TRANSPORT, INC.,

Defendants-Appellees.

UNPUBLISHED
February 21, 2025
1:15 PM

No. 367728
Kent Circuit Court
LC No. 22-003220-NI

Before: YOUNG, P.J., and GARRETT and WALLACE, JJ.

PER CURIAM.

Plaintiff, Yvetta Turner, suffered injuries when a vehicle that defendant Britain E. Ward drove rear-ended Turner's vehicle on the freeway. Turner filed this action, alleging that she suffered a serious impairment of body function within the meaning of MCL 500.3135 as a result of the accident. She appeals as of right the trial court's order granting summary disposition in favor of Ward and defendant Yellow Rose Transport, Inc. (Yellow Rose), under MCR 2.116(C)(10). Because the parties dispute the nature and extent of Turner's injuries, and the dispute is material to whether Turner suffered a serious impairment of body function, MCL 500.3135(2)(a) precluded the trial court from granting summary disposition in defendants' favor. Accordingly, we reverse and remand for further proceedings.

## I. FACTUAL BACKGROUND

Turner was driving on I-96 when the hood of her vehicle suddenly lifted up. She pulled over and used a bungee cord to secure the hood before rejoining the flow of traffic at a reduced speed with her hazard lights on. Ward, who was driving a semitruck for Yellow Rose, collided with the rear of Turner's vehicle. An ambulance transported Turner to the hospital, where she complained of pain in her abdomen, right shoulder, lower back, and neck as well as joint and muscle pain. A CT scan of Turner's abdomen showed a hernia, and palpation of the back of her neck revealed paraspinal right muscular tenderness. Turner also exhibited a limited range of motion of her right shoulder. An x-ray of her right shoulder showed "[s]clerosis and cystic changes of the greater tuberosity, likely related to rotator cuff tendinopathy."

-1-

Eight days after the accident, Turner went to a different hospital, complaining of pain in her back, right shoulder, neck, and left foot. She also reported experiencing dizziness the previous day. Hospital staff directed her to follow up with her primary-care physician. Records from Turner's primary-care physician dated approximately three months after the accident indicate that Turner's neck pain had worsened and radiated to her upper back and right shoulder. Turner also reported headaches and dizziness, and exhibited a decreased range of motion and tenderness in her neck and right shoulder.

Approximately four months after the accident, Turner went to the hospital because of severe abdominal pain. She underwent emergency surgery to relieve a partial bowel obstruction that had formed as a result of the hernia. In addition, an MRI taken several months after the accident revealed a shallow partial thickness tear along the bursal surface of the anterior distal supraspinatus tendon, or a rotator-cuff tear, and mild tendonitis elsewhere in the supraspinatus tendon.

Turner filed this action, alleging that she suffered a serious impairment of body function as stated in MCL 500.3135. Defendants moved for summary disposition under MCR 2.116(C)(10), arguing that Turner failed to demonstrate that she suffered an objective impairment as a result of the accident and that her injuries affected her lifestyle. Defendants relied in part on two insurance medical examinations (IMEs)[1] that their expert physicians conducted of Turner. Dr. Bruce McIntosh opined that the accident did not cause or aggravate Turner's hernia, which he believed had developed slowly over time. Similarly, Dr. James R. Ellis opined that Turner's other complaints were primarily degenerative, although he acknowledged that she likely suffered a cervical strain that may have caused a short-term flare-up of neck pain. The trial court granted defendants' motion, concluding that Turner failed to establish an objectively-manifested impairment. The court specifically reasoned that a doctor had not attributed Turner's hernia to the accident.

## II. STANDARD OF REVIEW

We review de novo the trial court's decision on a motion for summary disposition. *Hubbard v Stier*, 345 Mich App 620, 625; 9 NW3d 129 (2023). "Because a motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint, the circuit court must consider the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). Summary disposition under MCR 2.116(C)(10) is properly granted if no genuine issue of material fact exists "and the moving party

---

[1] Although defendants refer to these examinations as "independent medical examinations," we refer to them as insurance medical examinations. As this Court observed in *Micheli v Mich Auto Ins Placement Facility*, 340 Mich App 360, 364 n 3; 986 NW2d 451 (2022), the phrase "independent medical examination" is a "euphemistic term of art." In the insurance context, "an IME involves obtaining a second opinion from a doctor who is entirely selected and paid for by an insurance company, rendering the 'independence' of the examination somewhat questionable."

is entitled to judgment as a matter of law." *Piccione v Gillette*, 327 Mich App 16, 19; 932 NW2d 197 (2019) (quotation marks and citation omitted).

## III. DISCUSSION

"In 1973, the Michigan Legislature adopted the no-fault insurance act, MCL 500.3101 *et seq.* The act created a compulsory motor vehicle insurance program under which insureds may recover directly from their insurers, without regard to fault, for qualifying economic losses arising from motor vehicle incidents." *McCormick v Carrier*, 487 Mich 180, 189; 795 NW2d 517 (2010). "In exchange for ensuring certain and prompt recovery for economic loss, the act also limited tort liability" for noneconomic loss. *Id.* Under MCL 500.3135(1), "[a] person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." To constitute a "serious impairment of body function," an impairment must meet the following criteria:

> (a) It is objectively manifested, meaning it is observable or perceivable from actual symptoms or conditions by someone other than the injured person.
>
> (b) It is an impairment of an important body function, which is a body function of great value, significance, or consequence to the injured person.
>
> (c) It affects the injured person's general ability to lead his or her normal life, meaning it has had an influence on some of the person's capacity to live in his or her normal manner of living. [MCL 500.3135(5).][2]

In addition, MCL 500.3135(2)(a) states as follows:

> The issues of whether the injured person has suffered serious impairment of body function or permanent serious disfigurement are questions of law for the court if the court finds either of the following:
>
> (*i*) There is no factual dispute concerning the nature and extent of the person's injuries.
>
> (*ii*) There is a factual dispute concerning the nature and extent of the person's injuries, but the dispute is not material to the determination whether the person has suffered a serious impairment of body function or permanent serious disfigurement.

---

[2] We rely on the current version of MCL 500.3135, which was the version in effect on the date of the accident. The Legislature amended MCL 500.3135(5), effective June 11, 2019, to incorporate the three-prong serious-impairment-of-body-function test that our Supreme Court set forth in *McCormick*. See 2019 PA 21 and 2019 PA 22.

In this case, the parties dispute the nature and extent of Turner's injuries. Turner argues that her x-rays, CT scans, and MRI results evidence objectively-manifested impairments while defendants maintain that Turner's test results show only her subjective complaints and preexisting, degenerative changes. Thus, there exists a factual dispute regarding whether the evidence reveals only subjective complaints of pain. Subjective complaints of pain and suffering are insufficient to meet the serious-impairment threshold, and a plaintiff must instead introduce evidence establishing a physical basis for the pain and suffering. *McCormick*, 487 Mich at 197-198. In addition, there exists a factual dispute whether Turner's injuries resulted from the accident or from degenerative conditions. As such, the parties dispute the nature and extent of Turner's injuries.

Further, the factual dispute regarding the nature and extent of Turner's injuries is material to whether Turner suffered a serious impairment of body function as a result of the accident. For example, MCL 500.3135(5)(a) states that an impairment must be "objectively manifested, meaning [that] it is observable or perceivable from actual symptoms or conditions by someone other than the injured person." Records of Turner's hospital visit on the day of the accident indicated "paraspinal right muscular tenderness with palpation" of Turner's neck and a limited range of motion of her right shoulder. A CT scan of Turner's abdomen indicated that her condition may be related to recent trauma. A CT scan of Turner's lumbar spine revealed a small disc bulge. And an MRI of Turner's right shoulder revealed a rotator-cuff tear. Thus, the factual dispute regarding the nature and extent of Turner's injuries is germane to whether she suffered a serious impairment of body function as a result of the accident.

## IV. CONCLUSION

A review of the record shows that the parties dispute the nature and extent of Turner's injuries and that the dispute is material to whether she suffered a serious impairment of body function. Accordingly, MCL 500.3135(2)(a) precluded the trial court from deciding as a question of law whether Turner suffered a serious impairment of body function. Because that issue must be resolved by the jury, the trial court erred by granting defendants' motion for summary disposition.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Adrienne N. Young
/s/ Kristina Robinson Garrett
/s/ Randy J. Wallace