ROEMELMEYER v. ROEMELMEYER'S ESTATE.

1. EXECUTORS AND ADMINISTRATORS — CLAIM AGAINST ESTATE — BURDEN OF PROOF.

In a claim by a stepson against the estate of his stepmother for moneys turned over to her, out of which she boarded, clothed, and provided him with spending money, the burden was upon claimant to establish the amount due him; it being insufficient for him to prove the sums he turned over to her.

2. SAME—SET-OFF—DEDUCTIONS—BURDEN OF PROOF.

3 Comp. Laws 1915, § 13872, requiring the administrator of an estate to prove set-offs is not applicable, since said deductions are not matters of set-off, but sums which claimant must prove in order to establish the amount due him.

3. SET-OFF AND COUNTERCLAIM—STATUTORY RIGHT.

The right of set-off exists only by statute (3 Comp. Laws 1915, § 12468), the purpose being to obviate the necessity of a cross-action, and must not be confused with payment or recoupment.

4. LIMITATION OF ACTIONS—EXPRESS TRUST.

Where an express trust is created the statute of limitations does not run.

WIEST, BIRD, and MOORE, JJ., dissenting.

Error to Wayne; Law (Eugene F.), J., presiding. Submitted January 11, 1922. (Docket No. 77.) Decided July 20, 1922.

Frank Roemelmeyer presented a claim against the estate of Alice Roemelmeyer, deceased, for money had and received. The claim was disallowed by the commissioners, and plaintiff appealed to the circuit court. Judgment for defendant on a directed verdict. Plaintiff brings error. Affirmed.

*James H. Pound,* for appellant.

*Behr & Coolidge,* for appellee.

BIRD, J. (*dissenting*).   Plaintiff filed a claim against the estate of his stepmother to recover for wages which he had earned and turned over to her.   Defendant had verdict by direction of the court.   Plaintiff left school along about 1900, when he became 15 years of age, and went to work.   He lived in the family of his father, who, at that time, lived across the river from Cincinnati.   There were several children.   The stepmother appears to have managed the financial affairs of the whole family.   Plaintiff is shown to have been a steady worker and received increasing compensation for his work as the years went by.   For nearly 12 years he handed over to his stepmother his pay envelope and in turn she boarded him, furnished him clothes and spending money.   In 1912 the family moved to Detroit.   After that plaintiff kept his wages and paid for his board.   With her own money and that received from the other members of the family she invested in Detroit real estate with such success that when she died, in 1919, her estate was worth several thousand dollars.   After her decease plaintiff presented his claim for the money that he had turned over to her.   The trial court was impressed that there was sufficient testimony to establish his claim, but, in view of the fact that there was no testimony in the case from which a jury could determine what claimant's board was worth, or how much the stepmother had turned over to him for clothes and spending money, there could be no recovery.   On account of the lack of proof of the value of these items the trial court directed a verdict for the defendant.

1. If the burden of showing what claimant's board was worth and what amount of money his stepmother

had furnished him for clothes and spending money was upon plaintiff, the conclusion reached by the trial court was the correct one. The burden of establishing his claim was upon plaintiff. From the facts and circumstances shown we think the jury would have been justified in finding that plaintiff's claim had been established.

Dr. Joseph Aaron, the family physician, testified that Mrs. Roemelmeyer consulted him occasionally on business matters. He testified:

"*A.* She told me that Frank was her principal, practically, her principal support. That he had turned in his money from the time he went to work, and gave her all he earned, until—I cannot recollect now—until, oh, about around about the time when they came to Detroit.    *    *    *

"*A.* Well, in Detroit. He gave all his money, as a young boy, when he was working.

"*Q.* Now, then, what did she say as to whether she got that as a gift, or for contribution, or what she was going to do with it, if anything, in the way of returning it?

"*A.* Well, she stated that she would return the money. I suggested to her that it was necessary for her to make a will, and she would have made, or was going to make one.

"*Q.* Wait a minute. You cannot tell what she would have made.    *    *    *

(Question read by reporter.)

"*A.* It was not a gift. She would return it.

"*Q.* Was the question of the disposition of her property mentioned between you, and she, as to Frank, that would result by payment, or will, or any way?

"*A.* Yes, sir."

Blanche, the sister of plaintiff, testified as follows:

"*Q.* And what other things? I want to ask you what did you ever hear your mother say to Frank about compensating him for the money that he advanced to her over the board?

"*A.* Why, she often remarked that he should have it back. It was an understood fact, because often he

was dissatisfied, that he didn't have a bank account; that he had given it, and Roy had so much.  He didn't do the way Frank did.  And she said, never mind, she would pay it all back."

Besides this testimony there were several witnesses who testified having talked with Mrs. Roemelmeyer about Frank.  They repeated many expressions which she made of her appreciation of Frank and of his turning his pay envelope over to her.  Some of the expressions were, "that he would never regret it," "that he would lose nothing by it," and "that he would never be forgotten," etc.  The items of proof were sufficient to enable the jury to ascertain with reasonable certainty how much Frank had let her have. The trouble appears to have been that there was no proof as to the value of the items of set-off.  We think the assumption of the court that the burden of showing what money had been received by plaintiff for board, clothing and spending money, was upon him cannot be sustained.  The burden was upon the plaintiff to establish his claim.  This he did by facts and circumstances from which the jury would have been justified in finding that it was established.  The items of board, clothing and spending money were items which should have been presented and proved by the estate as matters of set-off.  The following section of the statute with reference to set-off in estate matters is in point.  It follows:

"When a creditor against whom the deceased had claims shall present a claim to the commissioners, the executor or administrator shall exhibit the claims of the deceased in offset to the claims of the creditor, and the commissioners shall ascertain and allow the balance against or in favor of the estate, as they shall find the same to be; but no claim barred by the statute of limitations shall be allowed by the commissioners in favor of or against the estate, as a set-off or otherwise."  3 Comp. Laws 1915, § 13872.

This court has made the following comment on this statute:

"This section stands by itself, and the general set-off law does not, in terms, apply to anything but actions. The power of commissioners is peculiar and very broad, and we think the language of this section should not be narrowed beyond its terms, and should allow a proper set-off in all cases." *Willard* v. *Fralick,* 31 Mich. 431.

Under this statute it was the duty of the administrator to exhibit the claims of set-off for the consideration of the jury. This being true, it was error for the court to place that burden upon the plaintiff and direct a verdict against him because he had not shown the amount of the set-off.

2. Some question was raised that the wages turned over to the stepmother before claimant was of age did not belong to him, but to the father. The testimony of the father on that question was susceptible of the inference that he had emancipated the boy. He testified that he had never made any claim to plaintiff's wages and never would.

We need not consider the statute of limitations as counsel state in their brief that that defense is not insisted upon.

The issue was not a difficult one. It was for plaintiff to establish his claim, either directly or by proof of facts and circumstances from which a jury could infer that there was an understanding between him and his stepmother that the money should be returned to him. It then became the duty of the estate to set off against this such sums as the stepmother had furnished him. A new trial must be had so that this procedure may be followed.

The judgment should be reversed and a new trial ordered. Plaintiff should recover costs, but instead

of recovering for the printing of 168 pages of brief he should recover for only 35 pages.

WIEST and MOORE, JJ., concurred with BIRD, J.

SHARPE, J.   A more extended statement of the facts seems necessary in order to understand the claim of plaintiff.   The deceased and Evan Roemelmeyer were married in Bellevue, Kentucky, in about 1890.   A son, Roy, was born in June, 1894, as a result of such marriage.   Evan had been married twice before. Frank, the claimant, and Blanche are children of his second wife.   Frank was born July 3, 1885, and Blanche in 1887.   When these children became of sufficient age, they began working and turned their earnings over to the deceased, who became the financial head of the family.   The earnings of the husband were also turned over to her except payments made by him on a home theretofore purchased under contract.   Blanche met with an accident, for which she received compensation in the sum of $1,500.   In 1912, the family decided to remove to Detroit.   The home in Bellevue was sold.   A part of Blanche's $1,500 had been used.   A house on Peterboro street, suitable for roomers, was purchased on contract in 1913 for $8,000. A $2,300 down payment was made, and included $900 of Blanche's money.   This represented the family assets at that time.   The title to this property was taken in Blanche's name.   Of this Frank had knowledge and yielded his assent.   The payments of $80 per month were kept up.   In April, 1919, the Peterboro house was sold for $16,000, and another on Forest avenue purchased on contract.   The record is not clear as to the details of these matters.   The writings were received in evidence, but do not appear in the record. The title to the Forest avenue property is in Blanche's name.   She testified that the deceased received $6,000 out of the proceeds of the sale of the Peterboro house

and she $3,500. The inventory of deceased's estate is not in the record. We find no evidence of the assets except this statement of Blanche. It is undisputed that Frank paid no money to his mother after coming to Detroit in 1912 except an amount agreed upon for board and clothes. His claim as presented does not appear in the record. The only reference I find to it is in an excerpt from the report of the commissioners on claims wherein it is stated to have been $7,890. Frank testified his claim was $6,513.51. Under the holding of Mr. Justice BIRD, the plaintiff made out a case when he offered proof tending to show that he had turned over his pay envelope each pay day to the deceased and that the burden is on the estate to show what should be deducted for board, clothes, etc. If we eliminate from his claim of $6,513.51 the sum of $1,355, which his counsel insists he should be allowed for payments made after 1912, it leaves a balance of $5,158.51, which he is claiming for moneys turned over, less deductions properly made, prior to the time the family removed to Detroit. The total family assets at that time, excluding the money received by Blanche as damages for her injury, were less than $2,500. It is undisputed that the father and mother and Blanche all worked during this period. It may be said that the jury may be trusted to make a fair allowance. Their verdict must be founded on the evidence submitted. That Frank is equitably entitled to a part of the moneys belonging to the estate of the deceased may be admitted. This, however, will not in itself justify the allowance of a claim to him which it will require substantially all the assets of the estate to pay.

The financial affairs of this family were conducted as are many others. All work, and the earnings of those who are wage-earners are turned over to the head of the family, usually the father, in this case the

mother.   The living expenses and all others incidental to family life are paid.   The savings are kept together and usually invested, as they were here, in a home which may be enjoyed by all.   It was unfortunate, indeed, that the deceased did not make a will, wherein she could, and doubtless would, after providing for the proper maintenance of the father during his declining days, have distributed the savings equitably amongst those who had contributed thereto.   That she did not do so is perhaps attributable to her sudden death. She was helping about the home in the morning and passed away before the close of the day.

If the holding of Mr. Justice BIRD be adhered to, any son who has assisted in maintaining the home and family in his boyhood and young manhood may, in case of the death of either the father or mother, in whose name a part or the whole of the family earnings may be, present a claim against the estate, prove in a general way his earnings, show that he turned them over to the deceased and secure the allowance of a claim therefor, less such an amount as the estate may be able to prove was expended for his benefit for his board and clothing.

Where such a claim is presented against an estate, I think the burden is cast on the claimant to establish by competent proof the amount due him; that it is not sufficient for him to prove the sums he claims to have turned over.   While we have not the plaintiff's claim, as presented to the commissioners, before us, it seems clear to me that he realized the burden of proving what deductions should be allowed was on him.   His counsel began his opening statement to the jury by saying:

"I am going to ask your honor to pay particular attention to my opening, as this case is out of the ordinary."

After relating the history of the family and their manner of life, he said:

"Our contention is, that it was agreed way back, as far as the beginning of it, that Frank was to be allowed. He was to pay a certain sum, or rate for his board and clothes."

Later, in such statement, he said:

"And then, in addition to that, she borrowed at different times certain moneys from him, and the claim in the case now here is, we will endeavor to show you, that at all times she recognized that there was an accounting to be had, between her and Frank; that she was going to pay Frank, and that was satisfactory to Frank. So that we expect to show, that Mrs. Roemelmeyer counselled with Frank, and the best of relationship existed between them. And the only difference that we have got now, is that she put off, and left off, that thing which she intended to do, and which we have got to come in here before you gentlemen, and have determined."

In his brief, he again assumes that such burden is on claimant and insists that he had offered sufficient proof as to deduction to justify the submission of the claim to the jury.

In my opinion, the statute relating to set-offs, quoted by Mr. Justice BIRD, has no application to the facts here presented. Plaintiff makes no claim that all of the moneys paid the deceased were to be returned to him. His claim is that such part thereof as was not expended by her for his support and maintenance was to be returned. It is thus apparent that deductions were to be made, and when such is the understanding I think the burden is on the claimant, and not on the estate, to show the amount thereof. Such deductions are not matters of set-off, but sums which plaintiff must himself prove in order to establish the amount which he claims to be his due.

"A set-off is a counter demand which a defendant

holds against a plaintiff, arising out of a transaction *extrinsic of plaintiff's cause of action,* the object of which is to liquidate the whole or a part of plaintiff's demand, according to the amount of the set-off, and like the modern recoupment is in the nature of a cross-action."  34 Cyc. p. 625.

The right of set-off exists only by statute.  The purpose of permitting it is to obviate the necessity of a cross-action.  *Gardiner* v. *Fargo,* 58 Mich. 72, 76. It must not be confused with payment or recoupment. The distinction is clearly pointed out in our early case of *Ward* v. *Fellers,* 3 Mich. 281.  While the rule there stated, limiting the amount of recovery by way of recoupment to the amount of the plaintiff's demand, has been changed by statute (3 Comp. Laws 1915, § 12477), there has been no substantial change in the statute then existing relating to set-off.  See compiler's note to section 12468.

Defendant urged as a reason for a directed verdict that plaintiff's claim for money paid prior to 1912 was barred by the statute of limitations.  The suggestion of its counsel that this defense would not be insisted on was doubtless due to the fact that a trust relation may be said to have been created by the payments as claimed.  Where an express trust is created, the statute does not run.  *In re Sellman's Estate,* 175 Mich. 700, 704.  While payments made under an express trust may be sued on in a court of law in certain cases (*Frank* v. *Morley's Estate,* 106 Mich. 635), the inadequacy of such a proceeding when an accounting is to be had and the rights of others are involved is well illustrated in the facts here presented.  As before stated, the earnings of the father and of Blanche were paid to the deceased as the financial head of the family in the same way as those of plaintiff.  While the contributions made by Roy are minimized and, owing to the verdict having been directed, we have

not the benefit of his testimony concerning them, it is apparent that he contributed something. If it be feasible for a court to determine the relative rights of the father and children of this family to the money in the hands of the deceased at her death, on which we here express no opinion, it seems clear that it must be done in a court of equity and not, as is here attempted, by the consideration of plaintiff's claim alone.

In my opinion, the verdict was properly directed and the judgment should be affirmed.

FELLOWS, C. J., and CLARK and STEERE, JJ., concurred with SHARPE, J.

The late Justice STONE took no part in this decision.