*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

UUSI, LLC and NORMAN RAUTIOLA,

Plaintiffs-Appellants/Cross-Appellees,

v

LOREN STIEG,

Defendant-Appellee/Cross-Appellant,

and

S&S INNOVATIONS CORPORATION and
TATTLER REUSABLE CANNING LIDS, LLC,

Defendants-Appellees.

UNPUBLISHED
January 28, 2021

No. 348272
Osceola Circuit Court
LC No. 16-014662-CK

Before: SHAPIRO, P.J., and SAWYER and BECKERING, JJ.

PER CURIAM.

In this contract dispute, plaintiffs appeal the trial court's judgment entered after a jury trial. The jury determined that defendants were not liable for fraud in relation to a Stock Purchase Agreement, but that defendant Loren Stieg was liable to plaintiff Norman Rautiola for repayment of a $170,000 loan, the terms of which were determined by the jury. Consistent with the jury's verdict, the trial court's judgment provides that the loan is repayable over a period of five years. Plaintiffs argue on appeal that the trial court erred by failing to find that the loan was a demand loan and instead allowing the jury to determine a reasonable period for repayment of the loan. Plaintiffs also argue that there is no evidence supporting the jury's verdict establishing a five-year term for repayment of the loan. Defendant Stieg has filed a cross-appeal, arguing that the trial court erred by not allowing him to use the affirmative defenses of setoff and recoupment to offset the loan award. For the reasons stated in this opinion, we affirm.

-1-

## I.  BACKGROUND

This case arises from an initial stock purchase agreement and a subsequent loan transaction involving plaintiffs' purchase of a 49-percent interest in defendant S&S Innovations Corporation ("S&S"), a Colorado Company, operating as Tattler Reusable Canning Lids, that makes reusable canning lids.  Defendant Loren Stieg owned a majority interest in S&S and wanted to end his partnership with his son and move the company to Michigan.  Stieg solicited an investment from plaintiff Norman Rautiola, the sole owner of plaintiff UUSI, LLC ("UUSI"), doing business as Nartron.

The parties entered into a Stock Purchase Agreement whereby plaintiffs purchased a 49-percent interest in S&S for a payment of $490,000.  After the agreement was signed on March 3, 2014, Stieg discovered that S&S owed approximately $170,000 to its creditors, who held liens against S&S's assets that prevented transfer of equipment and inventory to Michigan.  Stieg informed Rautiola and was amenable to letting Rautiola out of the agreement.  Rautiola, however, wanted to proceed and provided Stieg $170,000 to pay the outstanding amounts.  After Stieg and S&S moved to Michigan, the relationship between Stieg and Rautiola deteriorated and there was disagreement over Stieg's role in the management and operation of S&S.  As these disagreements progressed, Rautiola formed a separate company, Tattler Home Products, LLC, in which Stieg was not a member.[1]  In turn, Stieg founded Tattler Reusable Canning Lids, LLC, in which Rautiola was not a member.

Plaintiffs filed this action against Stieg, S&S, and Tattler Reusable Canning Lids, asserting various claims of fraud relating to Stieg's representations regarding S&S's financial condition.  Plaintiffs also alleged that Stieg breached his fiduciary duty of loyalty to the S&S shareholders by forming Tattler Reusable Canning Lids, LLC, for the purpose of competing against S&S.  The parties disagreed whether the $170,000 payment was intended as payment for Rautiola's purchase of an additional equity interest in S&S—making him a majority owner—or was intended only as a loan.  Plaintiffs requested that the trial court either declare Rautiola a majority shareholder of S&S or hold that the $170,000 payment constituted a loan that was payable on demand.  Defendants asserted affirmative defenses of recoupment and setoff "to the extent Plaintiffs owed [defendants] money from the operation of its canning business."

In a pretrial ruling, the trial court found that the $170,000 payment was intended as a loan,[2] but further ruled that the terms of the loan should be decided by a jury.  At trial, the trial court decided that defendants could pursue the affirmative defenses of recoupment or setoff, but only in relation to plaintiffs' claims for fraud or breach of fiduciary duty, and not as a defense to the $170,000 loan amount.  The jury found that Stieg had made misrepresentations on which Rautiola relied when entering into the Stock Purchase Agreement, but that UUSI was not damaged as a result.  The jury also found that Stieg did not breach his fiduciary duty as a majority shareholder

---

[1] Because Rautiola, Nartron, and Tattler Home Products, LLC, are interconnected, we will generally use "Nartron" to refer to activity on behalf of Rautiola's new company, unless otherwise indicated.

[2] Plaintiffs do not challenge the trial court's ruling that the transaction was a loan.

in S&S. Thus, because the jury found that plaintiffs had no damages, there was no recovery against defendants for which the defenses of recoupment or setoff could be applied. The jury found that Stieg was personally liable for the $170,000 loan, and determined that the loan was to be repaid over 60 months, with an interest rate of seven percent. The trial court thereafter entered a judgment consistent with the jury's findings.

## II. ANALYSIS

## A. PLAINTIFFS' APPEAL

Plaintiffs argue that the trial court erred when it found that the $170,000 was not a "demand loan." We disagree.[3]

In general, while the interpretation of a contract is a matter for the court, the effect of oral negotiations and understanding must be determined by the jury as a question of fact. As explained in *McKenzie v Sykes*, 47 Mich 294, 295-296; 11 NW 164 (1882):

> It is for the Court to interpret the written contracts of parties; for when they have assented to definite terms and stipulations and incorporated them in formal documents, the meaning of these it is supposed can always be discovered on inspection; nothing which is within the purview of the contract is left in doubt and there is, of course, nothing to submit to the jury. *But where the terms of the negotiation are left to oral proofs, the question what the parties said and did and what they intended should be understood thereb*y, is single and cannot be separated so as to refer one part to the jury and another part to the judge; *but in its entirety the question is one of fact*. [Citations omitted; emphasis added.]

See also *Guilmet v Campbell*, 385 Mich 57, 68; 188 NW2d 601 (1971) (quoting *McKenzie*, and holding that "the terms of a contract, when contested, are for the jury's determination. This is true even when the evidence of the terms is uncontradicted."); *Beebe v Koshnic*, 55 Mich 604, 605; 22 NW 59 (1885) ("The question, what oral contract parties made, is not for the Court, but for a jury."); *Linsell v Applied Handling, Inc,* 266 Mich App 1, 12; 697 NW2d 913 (2005) ("When the terms of a contract are contested, the actual terms of the contract are to be determined by the jury.").

The question presented is whether the trial court properly allowed the jury to determine the terms of the loan, which the parties contested, or whether the trial court was required to find that the loan was payable on demand by plaintiffs because the parties did not specify a time for

---

[3] The trial court decided this issue in the context of a motion for summary disposition. We review de novo the trial court's decision regarding a summary disposition motion. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Plaintiffs moved for summary disposition under MCR 2.116(C)(10). "Under MCR 2.116(C)(10), summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Piccione v Gillette*, 327 Mich App 16, 19; 932 NW2d 197 (2019) (quotation marks and citation omitted).

repayment. Plaintiffs rely on *Colburn v First Baptist Church & Society of Monroe*, 60 Mich 198, 198-199; 26 NW 878 (1886), in which church trustees executed joint and several promissory notes and then loaned the proceeds to the church. After one of the trustees died, the note signed by him was proved against his estate and paid. The estate then sued the church for recovery of that amount, and the Supreme Court affirmed the trial court's decision that the church was not legally liable for the note. The Court gave several reasons for affirming the trial court. *Id*. at 199-200. Relevant to the instant case, the Court stated:

> [W]e have no proof of any contract with [the deceased trustee], except such as arose out of his being one of the persons who lent [the church] money at the date of the notes, with no special arrangement as to time of payment. Under such circumstances a loan is impliedly payable on demand, and the lapse of time before this suit was brought unquestionably barred this claim. [*Id*. at 200.]

As always, the goal when interpreting contracts is to enforce the parties' intent. *Burkhardt v Bailey*, 260 Mich App 636, 656; 680 NW2d 453 (2004). In contrast to *Colburn*, in this case the evidence established that the loan was *not* intended to be payable on demand, and that the parties instead contemplated a time period for repayment, although Stieg and Rautiola disagreed on the specific time frame. Stieg testified that when Rautiola first offered to pay the $170,000, Stieg told Rautiola during a phone conversation that the money would be in the form of a loan. Stieg explained that because this was occurring so quickly, he was not thinking about a repayment schedule or a rate of interest and the two did not expressly agree on these terms at the time. Stieg testified that when the two spoke on March 26, 2014, he again told Rautiola that he understood that the $170,000 was in the form of a loan, not an agreement to purchase additional stock. Stieg also acknowledged that he testified at his deposition that he told Rautiola that he would repay the loan "with adequate interest." Stieg also testified that he thought 15 to 20 percent was a fair rate at that time, but he denied relating this to Rautiola.

Evidence was presented that Rautiola also contemplated that the $170,000 would be repayable over time, with interest. Notably, Rautiola acknowledged that one of the two bank drafts from Rautiola to S&S, in the amount of $136,554.87, contained a notation that read, "Purpose for the wire, payment in full for loan payoff for S&S Innovations Corp." The draft also stated that it was a 12-month loan payable with interest at 7 percent. Rautiola acknowledged that the other wire transfer for $33,507.97 contained a notation in the upper right-hand corner that stated "12-month loan at 7 percent interest to S&S Innovations Corp." Both transfers were dated March 11, 2014. In addition, when discussing these bank drafts, Rautiola maintained that he did not authorize the 7 percent interest rate, because Stieg had already told Rautiola that Stieg would pay 15 to 20 percent. This testimony also indicates that Rautiola expected repayment over time with interest, albeit at a higher interest rate, not that he contemplated that the $170,000 was to be a demand loan, in which the principal would be due upon demand.

Given this evidence, the trial court did not err when it determined that the facts did not establish a demand loan and that it was for the jury to determine the terms of the loan.

Plaintiffs also argue that the jury's verdict—finding that repayment was to be made over 60 months—is not supported by the evidence. We conclude that review of this issues is waived. During closing arguments, plaintiffs' counsel never argued that the evidence required the jury to

find that the parties agreed to a certain time period for repayment, or that the evidence could, at most, support only a finding that the loan would be repaid over a specified period, for example 12 to 18 months. Instead, counsel argued to the jury that it should determine a reasonable period for repayment. In a civil case, unlike a criminal case, a party must preserve a challenge to the sufficiency of the evidence by moving in the trial court for a directed verdict at the close of the nonmoving party's evidence or by a postverdict motion for a directed verdict or judgment notwithstanding the verdict. See *Napier v Jacobs*, 429 Mich 222, 229-230; 414 NW2d 862 (1987); *Shaw v Ecorse*, 283 Mich App 1, 22; 770 NW2d 31 (2009). Plaintiffs acknowledge that they did not do either. Generally, a party's failure to challenge the sufficiency of the evidence at trial waives that claim of error on appeal. See *Napier*, 429 Mich at 232-233. This Court does have discretion to review unpreserved challenges to the sufficiency of the evidence to prevent a miscarriage of justice. *Id*. at 233. However, the loss of a money judgment in a civil case is not itself sufficient to establish a miscarriage of justice that would justify review of an unpreserved challenge to the sufficiency of the evidence. *Id*. at 233-234. To hold otherwise, "would, in effect, impose a duty in every civil case on the trial judge to review sua sponte the sufficiency of the evidence and to grant unrequested verdicts." *Id*. at 234. Because plaintiffs seek relief from the jury's money judgment, plaintiffs cannot show manifest injustice and this claim is waived. Plaintiffs' waiver extinguishes any error and precludes appellate review. *The Cadle Co v Kentwood*, 285 Mich App 240, 255; 776 NW2d 145 (2009).

## B. DEFENDANTS' CROSS-APPEAL

In their cross-appeal, defendants argue that the trial court erred by not allowing them to use the doctrines of recoupment or setoff to offset from the $170,000 loan any amounts representing inventory or accounts receivable that Nartron allegedly appropriated after assets were transferred to Nartron's facility.[4]

"The defense of recoupment refers to a defendant's right, in the same action, to cut down the plaintiff's demand, either because the plaintiff has not complied with some cross obligation of the contract on which he or she sues or because the plaintiff has violated some legal duty in the making or performance of that contract." *Mudge v Macomb Co*, 458 Mich 87, 106; 580 NW2d 845 (1998) (quotation marks and citation omitted). "The defense of recoupment is applicable to claims arising out of the same contract or transaction." *McCoig Materials, LLC v Galui Constr, Inc*, 295 Mich App 684, 695; 818 NW2d 410 (2012) (quotation marks and citation omitted). Recoupment is an affirmative defense, and "[t]he defendant bears the burden of proving that the plaintiff breached the contract from which the defendant seeks a setoff or recoupment." *Id*.

In this case, the trial court ruled that defendants could not use recoupment to avoid or reduce repayment of the $170,000 loan amount because the actions for which defendants sought recoupment involved a separate "transaction," unrelated to the grant of the loan. Under the court's ruling, defendants' recoupment defense was limited to plaintiffs' claims of fraud concerning the initial Stock Purchase Agreement as well as the claim of breach of fiduciary duty. Because the

---

[4] Whether recoupment or setoff applies is a question of law that we review de novo. See *McCoig Materials, LLC v Galui Constr, Inc*, 295 Mich App 684, 693-694; 818 NW2d 410 (2012).

jury concluded that plaintiffs did not suffer damages for fraud and did not prove a breach of fiduciary duty, there were no damages against which defendants could claim recoupment.

Defendants argue that the trial court viewed the "transaction" too narrowly. They maintain that the loan arose out of the Stock Purchase Agreement because the loan was necessary to consummation of that agreement. We agree with defendants that, for all intents and purposes, the loan agreement was an integral part of the parties' decision to proceed with the Stock Purchase Agreement and that the two agreements should be viewed as a single transaction.

That said, the alleged conduct underlying defendants' counterclaim for recoupment does not relate to either the loan agreement or the Stock Purchase Agreement. Defendants essentially claim that after S&S relocated to Michigan plaintiffs misappropriated accounts receivable and inventory belonging to S&S. But this activity pertains to plaintiffs' *operational control* of S&S, whereas the $170,000 loan pertained to their *acquisition* of the 49 percent interest in S&S. Significantly, defendants have not alleged that plaintiffs' alleged misappropriation of S&S property breached the Stock Purchase Agreement (or any other agreement for that matter). Thus, even viewing the loan agreement as a part and parcel of the Stock Purchase Agreement, defendants' claim for recoupment is based on a wholly separate phase of the parties' relationship i.e., it relates the operation of S&S after the Stock Purchase Agreement became final. Plaintiffs' breach of fiduciary claim against Stieg *did* relate to the post-acquisition conduct, e.g., plaintiffs alleged that Stieg used Tattler Michigan to misappropriate sale proceeds related to sale of goods owned by S&S. However, the jury did not find that plaintiffs proved a breach of fiduciary duty and so there was no amount from which defendants could claim recoupment.

In sum, we agree with defendants that the loan agreement and Stock Purchase Agreement were effectively the same transaction or contract. However, defendants' claim of recoupment does not arise from the Stock Purchase Agreement. Rather, the alleged wrongdoing committed by plaintiffs occurred after the Stock Purchase Agreement was completed. The parties conduct in the post-acquisition phase was effectively a separate "transaction" that did not relate to the loan agreement or Stock Purchase Agreement. Accordingly, defendants could not seek recoupment to reduce or offset the $170,000 loan award to plaintiffs.

Defendants also argue that even if their claim for recoupment fails they could nonetheless maintain a claim for setoff because that defense does not have a "same transaction" requirement. Defendants are correct that a claim of setoff does need to relate to the transaction or contract for which plaintiffs seeks recovery. "'A set-off is a counter demand which a defendant holds against a plaintiff, arising out of a transaction *extrinsic* of plaintiff's cause of action, the object of which is to liquidate the whole or a part of plaintiff's demand, according to the amount of the set-off, and like the modern recoupment is in the nature of a cross action." *Roemelmeyer v Roemelmeyer's Estate*, 219 Mich 322, 330-331; 189 NW 83 (1922) (quotation marks and citation omitted; emphasis added). See also 20 Am Jur 2d, Counterclaim, § 36 ("A claim for setoff ordinarily need not arise out of the same transaction as that sued on; indeed, it has been stated that setoff grows out of matter independent of the plaintiff's cause of action.").

However, setoff arises when there is mutual debt between the parties. See *Walker v Farmers Ins Exch*, 226 Mich App 75, 79; 572 NW2d 17(1997) ("Setoff is a legal or equitable remedy that may occur when two entities that owe money to each other apply their mutual debts

against each other."). Here, defendants do not identify any debt owed to them by plaintiffs. Rather, they essentially claim to have incurred damages from plaintiffs' handling of S&S's account receivables and inventory. However, unlike recoupment, which is available when the defendant proves a breach of contract or duty,[5] we are not aware of any authority allowing setoff on the basis of something other than a debt owed.[6] Accordingly, we conclude that defendants have not set forth a cognizable claim for setoff.

Affirmed.

/s/ Douglas B. Shapiro
/s/ David H. Sawyer
/s/ Jane M. Beckering

---

[5] See *Mudge*, 458 Mich at 106. See also *Black's Law Dictionary* (11th ed) (defining "recoupment" in part as "[t]he right of a defendant to have the plaintiff's claim reduced or eliminated because of the plaintiff's breach of contract or duty in the same transaction").

[6] Nor have defendants alleged that plaintiffs' conduct amounts to a legal wrong.