*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JASMINE HARMON,

        Plaintiff-Appellant,

v

TOMAS JAMES EWING, THOMAS E. MASON
and JULIA LYNN EVERITT,

        Defendants-Appellees.

UNPUBLISHED
June 10, 2021

No. 350857
Calhoun Circuit Court
LC No. 2018-000197-NI

Before: STEPHENS, P.J., and SAWYER and BECKERING, JJ.

PER CURIAM.

In this action to recover tort damages under the no-fault act, MCL 500.3101 *et seq.*, plaintiff, Jasmine Harmon, appeals by right the order granting summary disposition to defendants, Tomas Ewing, Thomas Mason, and Julia Everitt. The trial court concluded that, because plaintiff failed to create a genuine issue of material fact that she suffered a serious impairment of body function, MCL 500.3135(1), defendants were entitled to summary disposition as a matter of law. We affirm.

## I. PERTINENT FACTS

On November 29, 2015, plaintiff was involved in "chain reaction" automobile collision on westbound I-94 while riding as a passenger in a vehicle driven by defendant Ewing. Claiming that the car operated by defendant Mason ahead of him kept varying his speed, Ewing ran into the back of Mason's car, and in turn defendant Everitt ran into the back of Ewing's car. Plaintiff testified at her deposition that she did not lose consciousness and was able to exit the vehicle and walk on her own, but she felt pain in her right arm, her chest, her neck and upper back, and the ribs on her right side. Emergency Medical Services did not respond to the crash, and plaintiff explained that she did not tell the responding police officer she was hurt because the pain was bearable and she did not think it signaled anything serious.

Over the next two weeks, plaintiff sought medical attention at Oakwood Annapolis Hospital, Detroit Receiving Hospital, and her primary care physician. Plaintiff underwent physical examinations, multiple chest x-rays, ultrasounds, and a computed tomography (CT) scan of her

head, none of which revealed a physical injury or other acute process, including bruising[1] to account for her various complaints during this time period of pain, headache, and nausea, or showed anything out of the ordinary. Records from Detroit Receiving Hospital show a likely diagnosis of "acute left rib contusion" based on plaintiff's clinical complaints, which plaintiff testified manifested itself through a shortness of breath that went away after three weeks.[2] In addition, plaintiff complained of pain during a routine visit to her primary care physician at Health Centers, for which her physician appears to have prescribed pain medication.

In January 2016, plaintiff moved to Atlanta, Georgia, to attend a cosmetology program. While in Georgia, she began treating with Dr. Leana Kart at Northwest Chiropractic. She received chiropractic manipulation on February 15, 2016, but did not receive treatment again until the end of September.[3] Approximately a year after the accident, Dr. Kart signed a "disability certificate" that indicated plaintiff's complete disability from November 25, 2016 through December 4, 2016, because of "low back and neck pain due to spinal trauma." In a letter dated December 22, 2016, Dr. Kart summarized her treatment of plaintiff, explaining that she had diagnosed plaintiff with "cervical sprain strain, muscle spasms, shoulder segmental dysfunction, lumbar sprain strain, [and] sacroiliac joint sprain strain." Dr. Kart further explained that plaintiff "was treated in a conservative manner with spinal manipulation to decrease and increase range of motion with several modalities." She also asserted that "[t]he objective findings and subjective complaints are directly related to her accident. Her initial injury has improved greatly."

In January 2017, plaintiff underwent an independent medical evaluation for insurance purposes. The examining physician, Dr. Ralph D'Auria, confirmed Dr. Kart's diagnoses, but opined that the treatment plan of adjustments and massages three times per week was not reasonable or appropriate for sprains/strains that occurred more than a year ago because the conditions would have long been resolved and "would not necessitate continued treatment." Noting that plaintiff said she did not have any pain between November 2015 and February 2016, and observing the gap in plaintiff's treatment from February 2016 to September 2016, Dr. D'Auria opined that "[t]hese lapses in treatment belie the assertion that her current complaints are related to the injury on November 29, 2015." The doctor concluded that plaintiff had reached maximum medical improvement, there was no permanent impairment resulting from the accident, and no need for attendant care or replacement services. Plaintiff's insurer enclosed Dr. D'Auria's report in a letter to plaintiff informing her that it was placing her claim on inactive status.

Plaintiff successfully completed her cosmetology program in June 2017. X-rays taken of plaintiff's cervical and thoracic spine in July 2017 were normal. X-rays of her cervical spine showed that "[t]he vertebral body height, disk spacing, and alignment are maintained" and that

---

[1] Plaintiff testified that she had bruising from the seatbelt, but that resolved after two to three weeks.

[2] Records do not support plaintiff's assertion that a doctor at Detroit Receiving Hospital diagnosed her with a broken rib, or ribs.

[3] Although plaintiff did not produce documentation of it, she testified that she underwent an MRI in Atlanta a few months after the accident due to headaches, and the MRI results were normal.

there was "no evidence of fracture or subluxation." X-rays of her thoracic spine revealed no paraspinal soft tissue swelling and "[n]o significant Ossetia findings in the thoracic spine." In November 2017, plaintiff's primary care physician recommended physical therapy. However, plaintiff did not undergo physical therapy because her insurance company would not pay for it.

In a complaint filed in January 2018, plaintiff alleged a single count of negligence against all three defendants. Plaintiff was deposed in October 2018. Her testimony did not indicate that the accident had disrupted pursuit of her educational goals. In addition, she testified that apart from missing two days of work after the accident, and taking three months off while she lived in Georgia, she had been able to perform her employment duties. However, she did testify to continued headaches and pain in her feet and along her entire back and that pain restricted certain of her recreational and social activities. On March 4, 2019, plaintiff underwent defense medical examinations with Leonard Sahn, M.D., and Gino Sessa, M.D., for purposes of this litigation. Both doctors concluded that there was no objective basis for plaintiff's clinical symptoms and that her prognosis was excellent. Sessa opined that an MRI "could potentially objectify [plaintiff's] symptom." There is no record of plaintiff having undergone the suggested MRI.

All three defendants moved for summary disposition in August 2019. Each argued in essence that plaintiff had failed to show that the accident resulted in a serious impairment of body function and that, even if she had made such showing, she had failed to establish that the alleged impairment affected her general ability to lead her normal life. In response, plaintiff relied on her deposition testimony and chiropractic records to provide evidence of objectively manifested impairments and examples of how her impairments affected her daily life.

The trial court heard arguments on defendants' motions for summary disposition on September 16, 2019. The parties' arguments regarding whether plaintiff had met the threshold requirements for recovering tort damages under MCL 500.3135(1) were consistent with their briefs. Ruling from the bench, the trial court referred to the three-prong *McCormick* test[4] for determining whether a person had satisfied MCL 500.3135(1), and concluded that plaintiff had failed to meet two of the test's requirements. She had not presented evidence of an objectively manifested impairment, and she had not shown that any alleged impairment affected her general ability to lead her normal life. Accordingly, the trial court granted defendants' motions for summary disposition. The court did not reach the issue of negligence.

II. ANALYSIS

Plaintiff contends on appeal that the trial court erred by summarily dismissing her case because her deposition testimony and records from her chiropractic treatment establish that the traffic accident caused her to suffer a serious impairment of body function that affects her general

---

[4] The test is thoroughly discussed in the discussion section. Briefly, to show a serious impairment of body function, a plaintiff must present evidence establishing: (1) an objectively manifested impairment (2) of an important body function (3) that affects the person's general ability to lead his or her normal life." *McCormick v Carrier*, 487 Mich 180, 195; 795 NW2d 517 (2010).

-3-

ability to lead her normal life. After a careful review of plaintiff's medical records and other evidence, we conclude that the trial court did not err in granting summary disposition.

## A. STANDARD OF REVIEW

The trial court granted summary judgment to defendants under MCR 2.116(C)(10). A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). The moving party has the initial burden to identify "the issues as to which the moving party believes there is no genuine issue as to any material fact," MCR 2.116(G)(4), and must support the motion with "[a]ffidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted in the motion," MCR 2.116(G)(3). If the nonmoving party has the burden to prove the claim at trial, the moving party may satisfy its burden in two ways: "by submitting affirmative evidence that negates an essential element of the nonmoving party's claim, *or* by demonstrating to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Lowrey v LMPS & LMPJ*, 500 Mich 1, 7; 890 NW2d 344 (2016) (quotation marks, citation, and brackets omitted).

If the moving party properly asserts and supports his or her motion for summary disposition, the "burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists." *Quinto v Cross and Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). To avoid summary disposition, the nonmoving party must present evidence that establishes that there is a genuine issue of disputed fact on the issue raised by the moving party. See *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 374-375; 775 NW2d 618 (2009). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "[I]f there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law," summary disposition is appropriate. *Piccione as Next Friend of Piccione v Gillette*, 327 Mich App 16, 19; 932 NW2d 197 (2019).

## B. MCL 500.3135(1)

Tort liability is limited under the Michigan no-fault insurance act. *McCormick v. Carrier*, 487 Mich 180, 189; 795 NW2d 517 (2010). Pursuant to MCL 500.3135(1),[5]

> A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement.

---

[5] The version of the statute current at the time of the accident and throughout most of the trial court proceedings in this case was MCL 500.3135, as amended by 2012 PA 158, made effective October 1, 2012. The only relevant, substantive change made by the recent amendment of the no-fault act, 2019 PA 21 and 22, was the incorporation of the Supreme Court's ruling in *McCormick*.

Plaintiff claims to have suffered a serious impairment of body function. A " 'serious impairment of body function' means an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her life." MCL 500.3135(5). To show a "serious impairment of body function," a plaintiff must establish three prongs: "(1) an objectively manifested impairment (2) of an important body function that (3) affects the person's general ability to lead his or her normal life." *McCormick*, 487 Mich at 195. "[T]he common meaning of "objectively manifested" in MCL 500.3135[5][6] is an impairment that is evidenced by actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function." *Id*. at 196. "[T]he proper inquiry is whether the *impairment* is objectively manifested, not the *injury* or its symptoms." *Id*. at 197. "[W]hile an injury is the actual damage or wound, an impairment generally relates to the effect of that damage. Accordingly, when considering an "impairment," the focus "is not on the injuries themselves, but how the injuries affected a particular body function." *Id*. (quotation marks and citation omitted). "[P]laintiffs must introduce evidence establishing that there is a physical basis for their subjective complaints of pain and suffering and [] showing an impairment generally requires medical testimony." *Id*. at 198 (quotation marks and citation omitted). A trial court may determine as a matter of law whether a plaintiff has met the threshold requirements of MCL 500.3135 if there is no material factual dispute regarding the nature and extent of the plaintiff's injuries. MCL 500.3135(2)(a); see also *id*. at 215.[7]

With regard to the first prong of the *McCormick* test, defendants established through hospital records, records of plaintiff's x-ray results, and reports from three physicians who examined plaintiff that there were no objective findings, i.e., no physical basis, to support plaintiff's subjective complaints of pain. See *Lowrey*, 500 Mich at 7. To avoid summary disposition, plaintiff had to present evidence that established a genuine issue of disputed fact regarding whether she suffered a serious impairment of a body function. See *Barnard Mfg Co, Inc*, 285 Mich App at 374-375.

As evidence that she suffered a serious impairment of body function, plaintiff attached to her motion for summary disposition the records from her visits to Oakwood Annapolis Hospital and Detroit Receiving Hospital. These records show that plaintiff sought treatment for pain, but they do not show an objectively manifested impairment as a basis for that pain. See *McCormick*,

---

[6] The *McCormick* Court referred to MCL 500.3135(7), which, at that time, contained the "objectively manifested impairment" language. See 2002 PA 697.

[7] Although the trial court did not address whether there was a material factual dispute that would prevent it from deciding as a matter of law whether plaintiff suffered an objectively manifested impairment of body function, MCL 500.3135(2)(a), our review of the record does not reveal a material *factual* dispute as to the nature and extent of plaintiff's injuries. Defendants do not deny that plaintiff was involved in an accident, that she experienced pain, or that she sought and received treatment on various occasions thereafter. Rather, the parties' dispute revolves around whether these facts meet the legal threshold established by MCL 500.3135, as interpreted by *McCormick*. In addition, plaintiff does not allege on appeal that the trial court improperly considered as a matter of law whether she met the threshold requirement of MCL 500.3135.

487 Mich at 197. Plaintiff also relied on her deposition. However, plaintiff's subjective complaints of pain cannot, by themselves, establish an objectively manifested impairment.[8] See *id*. (indicating that "the serious impairment threshold was not met by pain and suffering alone," but also required a physical basis for subjective complaints). In addition, plaintiff presented a disability certificate signed by her chiropractor. But the certificate does not provide a diagnosis or physical basis for plaintiff's pain; the basis for the restrictions appears to be plaintiff's subjective complaints of neck pain and low back pain. Plaintiff also presented the letter from her insurer informing her that her claim had been placed on inactive status, accompanied by Dr. D'Auria's report. The letter is of no evidentiary value to the issue at hand, although it does support plaintiff's explanation that she did not pursue physical therapy because her insurer would not pay for it, and Dr. D'Auria's report supports defendants' position more than plaintiff's.

Plaintiff also supported her claim of a serious impairment of body function with records of her clinical chiropractic examination. These records indicated limitations to all aspects of plaintiff's cervical and lumbar range of motion and multiple areas of pain. In addition, plaintiff presented Dr. Kart's letter from December 2016, in which she offered her diagnoses and asserted that they were related to the 2015 accident. However, this evidence is based on subjective data and is not sufficient under *McCormick* to establish a triable question of fact regarding whether plaintiff suffered an objectively manifested impairment of an important body function.

The plaintiff in *McCormick* suffered a broken left ankle when a coworker backed a truck into him, knocking him down, and then drove over his ankle. *McCormick*, 487 Mich at 185. The accident occurred in January 2005. The plaintiff underwent two surgeries and months of physical therapy. Afterwards, a medical examination cleared the plaintiff to return to work, but restricted him from prolonged standing or walking. Those restrictions were lifted two months later. *Id*. Nevertheless, the plaintiff "had difficulty walking, climbing, and crouching because of continuing ankle pain." *Id*. at 186. A functional capacity evaluation (FCE) conducted in March 2006 revealed, among other things, that the "range of motion in his left ankle was not within normal limits and that difficulty climbing and lifting weights had been reported and observed." *Id*.

In May 2006, a physician examined the plaintiff and "found 'no objective abnormality to correspond with his subjective complaints.' " *Id*. An FCE performed in August 2006, "affirmed that plaintiff could return to work without restriction and was capable of performing the tasks required for his job," but also noted that the plaintiff's "range of motion in his left ankle was still not within normal limits, although it had improved since the March 2006 FCE." *Id*.

The *McCormick* Court concluded that the plaintiff had shown an objectively manifested impairment of body function, reasoning as follows:

> There is no dispute that plaintiff has presented evidence that he suffered a broken ankle and actual symptoms or conditions that someone else would perceive as impairing body functions, such as walking, crouching, climbing, and lifting weight.

---

[8] Plaintiff testified that a doctor at Detroit Receiving diagnosed her with a broken rib, or ribs. However, the hospital records do not support her testimony.

Even 14 months after the incident, an FCE report observed that ankle pain and a reduced range of motion inhibited these body functions. Thus, plaintiff has satisfied this prong. [*McCormick*, 487 Mich at 218.]

Thus, the *McCormick* Court deemed the plaintiff to have satisfied the first prong of its test because he presented evidence of symptoms and conditions that others could observe as impairing his ability to walk, crouch, climb, and lift weight. See *id*. These observable symptoms and conditions had as a physical basis plaintiff's undisputed broken ankle.

Unlike the *McCormick* plaintiff, the present plaintiff has presented no evidence of any identifiable, specific injury related to the accident. The *McCormick* plaintiff could point to his broken ankle as the physical basis for various observable conditions affecting his ability to walk, crouch, climb, and lift weight. However, the present plaintiff presents no such objective evidence of an underlying physical injury from which could arise conditions or symptoms perceivable by others. To the extent plaintiff presents her chiropractor's diagnosis of a sprain/strain, this diagnosis is based on plaintiff's recitation of her history of back pain and on a clinical examination that relied on plaintiff's subjective assessment of the type and severity of her pain. Even if the Court assumes for the sake of argument that plaintiff's limited range of motion is an impairment, plaintiff has presented no evidence that it was objectively manifested. The only evidence she has presented of any alleged impairment is her own subjective complaints of pain and self-imposed limitations.

Viewing the evidence in the light most favorable to plaintiff, we conclude that plaintiff has failed to present sufficient evidence to create a genuine issue of material fact as to the first prong of the *McCormick* test, i.e., that she suffered "an objectively manifested impairment." *Id*. at 195. Because plaintiff has not established a triable issue regarding whether she suffered an objectively manifested impairment, we need not address whether the trial court erred in concluding that plaintiff also failed to meet the third prong of the *McCormick* test. *Id*. at 200 ("[I]f the injured person has suffered an objectively manifested impairment of body function, and that body function is important to that person, *then* the court must determine whether the impairment 'affects the person's general ability to lead his or her normal life.' ") (emphasis added). Having failed to establish a triable issue as to the first of the three required prongs, plaintiff cannot go forward with her claim, and the trial court did not err in granting summary disposition to defendants.[9]

Affirmed.

/s/ David H. Sawyer
/s/ Jane M. Beckering

---

[9] In light of our disposition of this issue, we decline to address plaintiff's claims regarding defendants' negligence associated with the accident.