*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT DAVIS,

      Plaintiff-Appellant,

v

JONATHAN HURD and CITY OF LINCOLN PARK,

      Defendants-Appellees,

and

STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY,

      Defendant.

UNPUBLISHED
July 6, 2023

No. 363168
Wayne Circuit Court
LC No. 21-003077-NI

Before: HOOD, P.J., and SHAPIRO and YATES, JJ.

PER CURIAM.

In this third-party tort claim for noneconomic loss caused by a car accident, plaintiff challenges on appeal the trial court's order granting defendant-appellees' motion for summary disposition according to MCR 2.116(C)(10) (no genuine issue of material fact). The trial court determined that plaintiff had not sustained a serious impairment of a body function in the collision. We reverse and remand for further proceedings.

## I. BACKGROUND

Plaintiff testified that the subject accident occurred on May 7, 2020, between 11:00 a.m. and noon. According to plaintiff, he was stopped in traffic when he was rear-ended by defendant Jonathan Hurd, who was allegedly working for defendant Lincoln Park at the time. Plaintiff reported that, after the accident, he exited his vehicle and walked around it, then spoke to the driver in the colliding vehicle in the street, who was apologetic. Plaintiff testified that the police asked if he was injured, and he responded that he was "fine," and he did not initially seek treatment. About an hour after the accident, however, plaintiff felt "the pain going up and down my back and

-1-

my knees" and was taken to the hospital. He believes that a scan did not reveal any broken bones so he was discharged with an unknown prescription.

Plaintiff stated that he received back treatment from Dr. Tejpaul Pannu, an MRI, and weekly chiropractic treatments with Dr. Lawrence Gralewski for injuries related to the accident. Plaintiff testified that he continued to have substantial pain in his neck and lower back, and slight pain in the left knee, and that he did not have any back problems before the accident. He explained that the pain was activated by moving. Plaintiff testified that he could no longer play sports, as he used to do once a month, and that sexual intercourse was painful. Plaintiff testified that he was not precluded from any other activities, but experienced pain when he had to bend, move, or lift, such as when dressing or doing household chores.

Plaintiff filed a complaint alleging that Hurd's negligence or gross negligence caused the accident and that Lincoln Park was liable under the motor vehicle exception to governmental immunity, MCL 691.1405. Defendants moved for summary disposition on the basis that plaintiff did not meet the threshold of suffering a serious impairment of a bodily function because his impairments did not affect his general ability to lead a normal life. In reply, plaintiff cited his physician's opinion that plaintiff's injuries left him "unable to do prolonged lifting, bending, twisting and things of that nature," and his testimony regarding difficulty with bending and lifting.

The trial court granted defendants' motion for summary disposition regarding serious bodily impairment. The court stated that plaintiff's testimony did not support that he had a serious impairment of bodily function because his injury did not prevent him from working and he could still participate in daily-living activities, just with increased pain.[1]

## II. ANALYSIS

Plaintiff argues that the trial court erred by concluding that the evidence presented no genuine issue of material fact whether plaintiff's general ability to lead his normal life was affected by the injuries he sustained in a car accident. We agree.[2]

---

[1] The trial court did not reach a determination regarding Lincoln Park's claim of governmental immunity, and the parties later stipulated to the dismissal of plaintiff's insurer, State Auto Property and Casualty Insurance Company, against whom he had brought an uninsured-motorist claim.

[2] A trial court's decision on a motion for summary disposition is reviewed de novo. *Ormsby v Capital Welding, Inc*, 471 Mich 45, 52; 684 NW2d 320 (2004). When reviewing a motion under MCR 2.116(C)(10), the court considers the affidavits, depositions, pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. *Rose v Nat'l Auction Group, Inc*, 466 Mich 453, 461; 646 NW2d 455 (2002). Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. *Id*. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

A plaintiff may file a third-party tort claim for noneconomic damages, such as pain and suffering or emotional distress, resulting from an automobile accident under MCL 500.3135(1) of the no-fault act,[3] "if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." *Hannay v Dep't of Transp*, 497 Mich 45, 51; 860 NW2d 67 (2014). In this case, the threshold question to determine is whether plaintiff suffered a serious impairment of body function.

This threshold question "should be determined by the court as a matter of law as long as there is no factual dispute regarding the nature and extent of the person's injuries that is material to determining whether the threshold standards are met." *McCormick v Carrier*, 487 Mich 180, 193; 795 NW2d 517 (2010) (quotation marks omitted). A fact is material to the matter when it is "significant or essential," even if not necessarily outcome-determinative. *Id*. at 194 (quotation marks and citation omitted). "[T]he test for establishing a serious impairment of body function requires showing '(1) an objectively manifested impairment (2) of an important body function that (3) affects the person's general ability to lead his or her normal life.' " *Patrick v Turkelson*, 322 Mich App 595, 606; 913 NW2d 369 (2018), quoting *McCormick*, 487 Mich at 195.[4]

According to MCL 500.3135(5)(a), an impairment is "objectively manifested" when "it is observable or perceivable from actual symptoms or conditions by someone other than the injured person." A showing of an objectively manifested impairment requires evidence, often medical testimony, that establishes a physical basis for the plaintiff's subjective complaints of pain and suffering. *Patrick*, 322 Mich App at 607, citing *McCormick*, 487 Mich at 197-198.

Plaintiff's chiropractor, Dr. Gralewski, submitted an affidavit detailing plaintiff's injuries as follows:

---

[3] MCL 500.3101 *et seq.*

[4] The definitions of a serious impairment of body function found in *McCormick*, 487 Mich at 197-198, were codified in MCL 500.3135(5), which provides as follows:

> (5) As used in this section, "serious impairment of body function" means an impairment that satisfies all of the following requirements:
>
> (a) It is objectively manifested, meaning it is observable or perceivable from actual symptoms or conditions by someone other than the injured person.
>
> (b) It is an impairment of an important body function, which is a body function of great value, significance, or consequence to the injured person.
>
> (c) It affects the injured person's general ability to lead his or her normal life, meaning it has had an influence on some of the person's capacity to live in his or her normal manner of living. Although temporal considerations may be relevant, there is no temporal requirement for how long an impairment must last. This examination is inherently fact and circumstance specific to each injured person, must be conducted on a case-by-case basis, and requires comparison of the injured person's life before and after the incident.

I have treated [plaintiff] for his neck and back pain. Through the course of evaluation and treatment, injuries consistent with trauma were discovered. These injuries include, but are not limited to, cervical segmental dysfunction, thoracic segmental dysfunction, thoracic sprain/strain, lumbar segmental dysfunction, sacral segmental dysfunction, and pelvic segmental dysfunction. Also, MRI testing showed disc injuries in his spine. All of his injuries have been objectively verified. These injuries were caused [by] the relevant vehicle collision.

A neurosurgeon, Dr. Pannu, stated that he treated plaintiff's "permanent spinal injuries" from the automobile accident with a steroid injection. Dr. Pannu described plaintiff's physical injuries as follows:

I have reviewed an MRI of [plaintiff's] spine, which established herniated and collapsed discs at L4-5 and L5-S l as well as herniated discs at C4-C5 and C5-C6, which is more significant causing narrowing of the canal and flattening of the left hemicord.

These affidavits indicated an objectively manifested impairment and established a physical basis for plaintiff's subjective complaints of pain in his back and neck, particularly during physical activity.

Next for consideration is whether the impaired body function is "important." An important body function is " '[m]arked by or having great value, significance, or consequence,' " to the individual's life. *McCormick*, 487 Mich at 199 (alteration in original), quoting *The American Heritage Dictionary* (2d college ed, 1982). This "inherently subjective inquiry" is considered on a "case-by-case basis, because what may seem to be a trivial body function for most people may be subjectively important to some, depending on the relationship of that function to the person's life." *McCormick*, 487 Mich at 199. In this case, the evidence indicated that plaintiff's back and neck injuries produced pain when he performed normal activities. The parties do not dispute that pain-free movements of an individual's back and neck are important body functions.

The determinative question in this case is whether the objectively manifested impairment of an important body function affected plaintiff's general ability to lead his normal life. To "affect" that "general ability" means, in this context, to "influence some of the person's power or skill, i.e., the person's capacity, to lead a normal life." *McCormick*, 487 Mich at 201. A determination of this factor involves "a subjective, person- and fact-specific inquiry that must be decided on a case-by-case basis," and "necessarily requires a comparison of the plaintiff's life before and after the incident." *Id.* at 202. See also MCL 500.3135(5)(c).

Plaintiff testified that he did not have any back problems before the accident, but that after the accident he had been experiencing pain in his neck and lower back. Plaintiff's chiropractor, Dr. Gralewski, opined in his affidavit that plaintiff's "injuries are serious," and "recommended that he have restrictions from activities involving any prolonged lifting, reaching, pulling, pushing, twisting, bending, sitting or standing and he has permanent restrictions from heavy lifting." Plaintiff also received back treatment from Dr. Pannu, who similarly recommended that plaintiff have "restrictions from activities involving any prolonged lifting, reaching, pulling, pushing,

-4-

twisting, bending, sitting or standing and restrictions from heavy lifting." Thus, the medical evidence generally indicated that the injury was "serious," if not debilitating.

Plaintiff stated that he "can't do what like I used to," and that he experienced pain, or "[t]ingling, burning, throbbing," when he was active, including when lifting a gallon of milk. Plaintiff explained that his daily activities were not stopped, but that he experienced pain during the following:

> Get up out of bed in the morning, just getting out of bed because I have to bend over, dressing myself like socks. I have to touch my toes, socks, underwear where I have to bend all the way over or bend my knees and back to put on. Any . . . type of movements where I have to bend, lift anything, that is all bad. I can't like houseclean chores, house chores, take out the garbage. Anything—any type of things like that is altered. All that is altered.

As noted, plaintiff testified that he could no longer play sports, as he used to do once a month, and that sexual intercourse was painful.

The trial court asked plaintiff's counsel several times how plaintiff's activity was impaired, given that he was not precluded from any of the activities that he participated in before the accident, but now just experienced pain with the same activities. In finding that plaintiff did not experience a serious impairment of a body function, the trial court reasoned as follows:

> [T]he Plaintiff provided affidavits of these treating physicians, . . . which seem to suggest that there was some serious impairment of a bodily function that impaired the Plaintiff's ability to lead a normal life, the reality is that it's just not supported by the testimony of the Plaintiff. [A]nd I understand that I have to take this testimony . . . and the evidence in the light most favorable to the nonmoving party but you just can't get around the testimony . . . of the Plaintiff here.
>
> * * *
>
> . . . [T]he Plaintiff testified, very clearly, that his inability to work or . . . his limitations of work, he's been working part-time because of the chip shortage with GM and the parts. It has nothing to do with . . . any injuries that he sustained in the automobile accident. . . . [H]e talks about . . . that it's painful to do so, when it comes to sexual relations with his girlfriend . . . . He doesn't say that I'm no longer able to engage in a sexual relations; it just says there's some pain. You know, he talks about an ability to do chores around the house. He says that he's still able to do the chores but it's painful. You know, simply saying that—that now that you do—you—you can still do everything that you wanna do but you have pain when you do it, I don't think meets the legal definition of the threshold of a serious impairment of a bodily function that impairs his ability to lead a normal life. The . . . only thing that he unequivocally says that he does not do is play basketball with his friends, which is something that his testimony was that he . . . occasionally did. . . . I'm . . . just not seeing the—the—even taking the testimony and the evidence in the light most favorable to the Plaintiff, which I know it's my obligation to do at this juncture, it's just not there, as far as I'm concerned.

We conclude that the trial court erred in this regard. Again, to affect a person's general ability to lead his or her normal life is to "influence some of the person's power or skill, i.e., the person's capacity, to lead a normal life." *McCormick*, 487 Mich at 201. The trial court's statement that plaintiff did not meet the threshold for serious impairment because "you can still do everything that you wanna do but you have pain when you do it" indicated a failure to appreciate that its task was to evaluate whether there was evidence that plaintiff's general ability to live his normal life was "influenced" or "affected" by the impairment.

Plaintiff offered some evidence that, after his injuries, his normal household activities were altered by the pain he experienced while performing them. Plaintiff plainly stated that that he "can't do what like I used to," which indicated that his life was "influenced," or "affected," by the pain from his spinal injuries while performing household tasks. The trial court's finding that plaintiff did not meet the serious impairment threshold because he retained the ability to continue his ordinary tasks was contrary to the instruction in *McCormick*, 487 Mich at 202, that courts "consider not only whether the impairment has led the person to completely cease a pre-incident activity or lifestyle element, but also whether, although a person is able to lead his or her pre-incident normal life, the person's general ability to do so was nonetheless affected." As the Supreme Court noted, "the statute merely requires that a person's general ability to lead his or her normal life has been *affected,* not destroyed." *Id*. "[T]he statute only requires that some of the person's *ability* to live in his or her normal manner of living has been affected, not that some of the person's normal manner of living has itself been affected." *Id*. The trial court should not "focus on how much the impairment affects a person's *life,* instead of how much it affects the person's *ability* to live his or her life." *Id*. at 204.

Plaintiff's testimony, and the affidavits of his physicians, constituted substantial evidence that the spinal injuries from the accident that were causing him pain as he attempted ordinary tasks, to some extent, affected plaintiff's "general ability to lead his . . . normal life." *McCormick*, 487 Mich at 201. When there is conflicting evidence whether a claimed injury qualifies as a serious impairment of body function, there is a genuine issue of fact, and it is error for the trial court to decide the question as a matter of law. *Patrick*, 322 Mich App at 614-615. Because there was a genuine issue of material fact regarding the threshold determination whether plaintiff's general ability to lead his normal life had been affected by his impairment, reversal of the trial court's grant of summary disposition is warranted. See *Piccione v Gillette*, 327 Mich App 16, 23; 932 NW2d 197 (2019) ("[G]iven that there is a genuine issue of material fact with regard to the third prong of the *McCormick* test, . . . summary disposition was not appropriate.").

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Noah P. Hood
/s/ Douglas B. Shapiro
/s/ Christopher P. Yates